UNITED STATES of America,
Appellee,

v.

Gary Steven **FLORENCE**, Appellant.

No. 71–1433.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 6, 1971.

Decided March 14, 1972.

Richard F. Pence, Parkersburg, W. Va., on brief for appellant.

Paul C. Camilletti, U. S. Atty., and James F. Companion, Asst. U. S. Atty., on brief for appellee.

Before BRYAN, WINTER and BUTZNER, Circuit Judges.

WINTER, Circuit Judge:

Gary Steven Florence was convicted by a jury of refusing to report for induction into the armed forces in violation of 50 U.S.C. App. § 462(a) on April 23, 1971. He was sentenced the same day to three years' imprisonment and fined one thousand dollars.

In this appeal Florence contends (1) that he was denied his right to a speedy trial in that he was arrested on January 23, 1970, but was not brought to trial until April 12, 1971; (2) that remarks made by the district judge and a prospective juror prejudiced the jury and made it impossible for appellant to receive an impartial trial; (3) that he did not receive a trial by a jury of his peers because the petit jury was composed of individuals who resided in the area near Elkins, West Virginia, and whose economic and sociological backgrounds are different from those of individuals who reside in appellant's home county of Wood; (4) that the appellant was entitled to have persons on the jury panel who were opposed to the draft laws; (5) that the trial court abused its discretion when it required that defendant and his witnesses travel from Parkersburg, West Virginia, to Elkins, West Virginia, for the trial; (6) that the district judge acted improperly during two "bench conferences" which were held during the trial; and (7) that the district court erred in refusing to allow the defendant to introduce evidence that his draft classification was improper.

This appeal was first submitted to a screening panel which, after examination of the briefs, the appendix and the record, was satisfied that, except for Florence's claim that illegal arbitrary discrimination had been practiced in the makeup of the master jury wheel from which the jury which tried him was selected, Florence's various contentions were insubstantial and without merit. With regard to the exceptions, the screening panel ordered the filing of supplemental briefs addressed to the question and set the case for argument on that contention.

I

We agree that Florence's other contentions are lacking in merit. Florence has not shown that he was in any way prejudiced by the fact that the trial occurred more than one year after his arrest. In fact, an examination of the record reveals that the delay was due primarily to the fact that Florence's retained defense counsel requested and received three postponements of the arraignment date and chose not to appear on the date the trial was originally scheduled.

It is within the sound discretion of the trial judge to grant or refuse a motion for mistrial. United States v. Norris, 325 F.2d 209 (4 Cir. 1963); White v. United States, 279 F.2d 740 (4 Cir. 1960). The action of the district judge refusing to declare a mistrial when a juror made an allegedly prejudicial remark was not an abuse of his discretion. We also feel that the remarks of the district judge on January 29, 1971, and the district judge's conduct during the "bench conferences" in no way affected Florence's right to a fair trial.

An examination of the briefs and the record shows that Florence's other allegations, except that with regard to geographical makeup of the jury panel, are

frivolous and further discussion of them is unwarranted.

## II

Florence was indicted and tried at the Elkins, West Virginia, place of holding court, one of the six places for holding court in the Northern District of West Virginia. 28 U.S.C.A. § 129. This meant that the jury panel, from which the grand jury which indicted him and the petit jury which convicted him were drawn, was chosen from the eleven counties comprising the Elkins "division," as set forth in the Jury Selection Plan for the Northern District of West Virginia.*

Florence has been a life-long resident of Wood County, West Virginia. The order to report for induction, which he failed to obey, directed him to report at Parkersburg, West Virginia. Parkersburg is also a place for holding court, and, under the Jury Selection Plan, Wood County is one of the counties from which juries for the Parkersburg "division" are drawn. Wood County is not included in the group of eleven counties from which jurors for the Elkins "division" are drawn. It necessarily follows that, as a result of being indicted and tried at the Elkins "division," no jurors from the county of Florence's residence and no jurors from the "division" in which the crime was committed could serve on the grand or petit jury which indicted and convicted the defendant.

Prior to his trial, Florence filed a motion in which he requested the court to allow him to have a jury panel which included persons "that would be his *peers* and representative of his home-town area as well as representative of the Northern District of the State of West Virginia." (emphasis in original) The motion asserted that the jurors chosen

for service at the Elkins "division" did not "meet the constitutional nor statutory requirements of a jury to try the issue in this case." The district judge treated the motion as one under Rule 18, F.R.Crim.P., to transfer the case from the Elkins "division" to the Parkersburg "division" and denied it.

Elkins and Parkersburg are 125 miles apart, according to the Rand McNally Standard Highway Mileage Guide. In fact, Florence was not precluded from producing any witnesses at his trial whom he would have been able to produce had the case been tried in the Parkersburg place of holding trial; but, of necessity, all of defendant's witnesses were required to travel from Wood County, West Virginia, to Elkins. In his brief, Florence appends statistical data to show the population of Wood County, West Virginia, and the population of each of the eleven counties comprising the Elkins "division," based upon the 1940, 1950, 1960 and 1970 census figures, and he purports to show (as of 1965) the assessed valuation of all properties of all classes, expenditures by county governments, percentage of total personal income derived from welfare programs, total expenditures for public education, percentage of high school graduates who enrolled in colleges, personal income in absolute amounts, personal income as percentages of national income, retail sales and percentage of urban population (these as of 1970) for Wood County and the eleven counties. These data have little probative value because Wood County is only one of four counties from which jurors for the Parkersburg place of holding court are drawn, and no data is supplied with respect to the other three. Cf. United States v. DiTommaso, 405 F.2d 385, 392 (4 Cir. 1968), cert. den., 394 U.S. 934,

---

* 28 U.S.C.A. § 129 does not divide the Northern District of West Virginia into divisions; it merely names places of holding court. But, by virtue of the Jury Selection and Service Act of 1968, 28 U.S.C.A. § 1869(e) (2), where there are not *statutory* divisions of a district court but only places for holding court, "divi-

sion" is defined as "such counties, parishes, or similar political subdivisions surrounding the places where court is held as the district court plan shall determine: *Provided,* That each county, parish, or similar political subdivision shall be included in some such division . . . ."

89 S.Ct. 1209, 22 L.Ed.2d 465 (1969). We take judicial notice that the Northern District of West Virginia has no cities having a population in excess of 50,000 persons and that the district—indeed, the state—generally is rural in character. Even Parkersburg, which is the second largest city in the district, was shown by the 1970 census to have a population of only 44,208.

### III

The Jury Selection and Service Act of 1968, 28 U.S.C.A. § 1861 et seq. (1966 Ed. and 1972 Cum.Supp.) requires each United States district court to place into effect a plan for the random selection of grand and petit jurors which shall "ensure that names of persons residing in each of the counties, parishes, or similar political subdivisions within the judicial district or division are placed in a master jury wheel; and . . . that each county, parish, or similar political subdivision . . . is substantially proportionately represented in the master jury wheel . . ." (§ 1863(b) (3) ). And, as has been shown, a place of holding court is defined as a "division" for purposes of the Act.

Since the Act requires only that a selection be made of jurors from the counties, parishes, or similar political subdivisions surrounding the place where the court is held—the precise designation to be determined by the court —it gives no right to a jury from the entire district where there is a plan encompassing divisions. The validity of this restriction appears established, because, even before the Act, district courts had power under 28 U.S.C.A. § 1865(a) (1966 Ed.) to select jurors from "such parts of the district as the court directs so as to be most favorable to an impartial trial, and not to incur unnecessary expense or unduly burden the citizens of any part of the district with jury service." The validity of a selection less encompassing than district-wide was repeatedly upheld against attacks that a defendant was entitled to a jury selected from the entire district and not from just the division or area surrounding the place of trial where trial was held. United States v. Gottfried, 165 F.2d 360 (2 Cir. 1948), cert. den., 333 U.S. 860, 68 S.Ct. 738, 92 L.Ed. 1139 (1948) ; Spencer v. United States, 169 F. 562 (8 Cir. 1909) ; United States v. Peuschel, 116 F. 642 (S.D.Cal.1902). See also, United States v. Marcello, 423 F.2d 993, 998–999 (5 Cir. 1970), cert. den., 398 U.S. 959, 90 S.Ct. 2172, 26 L. Ed.2d 543 (1970) ; United States v. Kelly, 349 F.2d 720, 779 (2 Cir. 1965), cert. den., 384 U.S. 947, 86 S.Ct. 1467, 16 L. Ed.2d 544 (1966) ; Katz v. United States, 321 F.2d 7, 9 (1 Cir. 1963), cert. den., 375 U.S. 903, 84 S.Ct. 193, 11 L. Ed.2d 144 (1963) ; United States v. Titus, 210 F.2d 210, 213 (2 Cir. 1954) ; Yoho v. United States, 202 F.2d 241, 242, 14 Alaska 174 (9 Cir. 1953). It should be noted that United States v. Gottfried, *supra,* upheld the validity of this restriction even after consideration of Thiel v. Southern Pacific Co., 328 U. S. 217, 66 S.Ct. 984, 90 L.Ed. 1181 (1946), relied on by defendant, which held that jurors must be drawn in such a manner as to include representatives of all of the economic, social, religious, political and *geographical* groups of the community. Thus, under old § 1865(a) the district court would have been permitted to draw jurors only from the Elkins "division," and neither the 1968 Act nor the Constitution requires a departure from this rule.

Prior to July 1, 1966, Rule 18, F.R.Crim.P., provided that venue for the prosecution of a criminal case in a district divided into divisions lay in the division where the crime was committed. Of course, West Virginia was not then divided into *statutory* divisions so that the old rule would not have availed defendant the relief he sought. In any event, present Rule 18 fixes venue "in a *district* in which the offense was committed" and permits the court to "fix the place of trial within the district with due regard to the convenience of the defendant and the witnesses." The purpose of the new rule was to abolish

the determination of venue by division so as to eliminate the irrational results which had flowed from the previous rule, especially since only half of the districts were statutorily divided into districts. Committee Note to 1966 Amendment of Rule 18, 18 U.S.C.A. following Rule 18, at p. 113. The Committee was of the view, and we agree, that the change was constitutionally permissible:

The amendment eliminates the requirement that the prosecution shall be in a division in which the offense was committed and vests discretion in the court to fix the place of trial at any place within the district with due regard to the convenience of the defendant and his witnesses.

The Sixth Amendment provides that the defendant shall have the right to a trial "by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law. . . ." There is no constitutional right to trial within a division. See United States v. Anderson, 328 U.S. 699, 704, 705 [66 S.Ct. 1213, 90 L.Ed. 1529], (1946); Barrett v. United States, 169 U.S. 218 [18 S. Ct. 327, 42 L.Ed. 723], (1898); Lafoon v. United States, 250 F.2d 958 (5th Cir. 1958); Carrillo v. Squier, 137 F.2d 648 (9th Cir. 1943); McNealey v. Johnston, 100 F.2d 280, 282 (9th Cir. 1938). Cf. Platt v. Minnesota Mining and Manufacturing Co., 376 U.S. 240 [84 S.Ct. 769, 11 L.Ed. 2d 674], (1964).

 Of course, present Rule 18 permits a transfer within the district for the "convenience of the defendant and the witnesses." Probably a case for intradistrict transfer can be more readily made where it is proposed to try a defendant in a division or place for holding trial other than the one in which the crime was allegedly committed because it is more likely that there will be inconvenience to the defendant and his witnesses. But this is not to say that a transfer, in such a case, becomes a matter of right. Other factors, including the delay in reaching trial which would result from a transfer, as well as the actual inconvenience to the defendant and his witnesses of denying a transfer, are to be considered and balanced.

To summarize, we conclude that Florence had neither a constitutional nor statutory right to a district-wide jury nor to a jury selected from the Parkersburg "division." He had no constitutional or statutory right to venue in the Parkersburg "division." While the court, in the exercise of its sound discretion, was empowered to transfer his place of trial from Elkins to Parkersburg for his convenience and the convenience of his witnesses, we find no abuse of discretion in treating his motion as one to transfer and denying it. Certainly, there was not such persuasive proof of geographical disparity between the two "divisions" that transfer should have been granted for this reason.

Affirmed.