**UNITED STATES of America, Appellee,**

v.

**Douglas D. OLSON, Appellant.**

**No. 77–1725.**

United States Court of Appeals, Eighth Circuit.

Submitted March 13, 1978.

Decided May 11, 1978.

John A. Gale of Girard & Gale, North Platte, Neb., for appellant.

Richard J. Nolan, Asst. U. S. Atty., Lincoln, Neb., argued, Edward G. Warin, U. S. Atty., Omaha, Neb., on brief, for appellee.

Before VAN OOSTERHOUT, Senior Circuit Judge, and HENLEY, Circuit Judge, and LARSON, Senior District Judge.*

VAN OOSTERHOUT, Senior Circuit Judge.

A two-count information filed in the United States District Court for the District of Nebraska on April 5, 1977, charged appellant Douglas D. Olson with violations of 26 U.S.C. § 7205.[1] Count I alleged that on or about November 22, 1975, Olson supplied his employer, the Chicago and Northwestern Transportation Company, with a signed employee withholding allowance certificate, form W–4E, wherein he falsely certified, knowing the same to be false, that he had incurred no federal income tax liability in 1974 and anticipated none in 1975. Count II alleged a substantially identical violation on or about April 29, 1976, at which time Olson allegedly supplied a form W–4E which contained similar knowingly false statements about his tax liability for 1975 and 1976.

Olson was tried on the above charges in North Platte, Nebraska on August 8–9, 1977, before the Honorable Warren K. Urbom, Chief Judge, and a jury. The defense was conducted *pro se.* Guilty verdicts were returned on both counts, and a judgment of conviction was duly entered. Olson was sentenced to one-year concurrent sentences, all but ten days of which were suspended, provided Olson comply with several conditions, including payment of a fine in the aggregate amount of five hundred dollars. Alleging numerous grounds for reversal, Olson appeals. For the reasons hereinafter stated, we affirm.

We discuss the various contentions in the order in which they are raised. The facts of the case will be set out to the extent necessary in the course of this opinion.

■ First, Olson contends the district court erred in failing to appoint advisory counsel to assist in the conduct of his *pro se* defense. Prior to arraignment Olson had requested that one Lowell Anderson, who is not an attorney, be allowed to represent him. At arraignment the request was denied, but the court advised Olson as follows:

> What I shall do, Mr. Olson, is simply acknowledge your right to defend yourself. I do offer to appoint counsel for you. I cannot permit Mr. Anderson, who is not an attorney admitted to practice in this court, to represent you or to speak for you. He can speak to you, he can speak with you, but he cannot speak for you. That simply means if you want to talk with him, that is your right, and I will not interfere with that. As far as any speaking that is done, you must do that. Now, I repeat, if you want counsel appointed for you, and if you can't afford to hire your own counsel, I am not only willing but eager that that be done. So I want you to understand that, not only now, but at any time.

There is no contention that the court erred in denying the request to be represented by Anderson. In any event this court has re-

---

* The Honorable Earl R. Larson, Senior United States District Judge, District of Minnesota, sitting by designation.

1. The statute provides:
Any individual required to supply information to his employer under section 3402 who willfully supplies false or fraudulent information, or who willfully fails to supply information thereunder which would require an increase in the tax to be withheld under section 3402, shall, in lieu of any other penalty provided by law (except the penalty provided by section 6682), upon conviction thereof, be fined not more than $500, or imprisoned not more than 1 year, or both.

peatedly held that a defendant has no constitutional right to be represented by lay or unlicensed counsel. *United States v. Buttorff,* 572 F.2d 619 (8th Cir. 1978); *United States v. Pilla,* 550 F.2d 1085, 1093 (8th Cir. 1977); *United States v. Hinderman,* 528 F.2d 100, 103 (8th Cir. 1976). In addition, Olson frankly admits that he refused the trial court's offer to appoint a licensed attorney to represent him.

Olson nevertheless contends the court erred in not appointing advisory counsel. We of course continue to approve the use of advisory counsel in cases where the defense is conducted *pro se. See United States v. Pilla, supra* at 1093; *United States v. Hinderman, supra* at 103; *United States v. Sturgeon,* 501 F.2d 1270, 1275 (8th Cir. 1974); *see also Faretta v. California,* 422 U.S. 806, 835 n. 46, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). But we have never held, and we decline to do so now, that the trial court must appoint advisory counsel even after fairly ascertaining that the defendant will not accept licensed counsel. Indeed, we have rejected the view that a defendant has a right both to represent himself and to be represented by counsel—even if a request for such hybrid representation is made. *United States v. Williams,* 534 F.2d 119, 123 (8th Cir. 1976). As noted in *Williams,* the matter is properly left to the discretion of the trial court, and there was no abuse of discretion here. We add that Olson in fact exhibited considerably more courtroom skill than would most lay persons.

■ Second, Olson contends the trial court erred in certain of its discovery rulings and in refusing to grant a continuance upon the Government's alleged failure to make discovery. Discovery matters are committed to the sound discretion of the trial court and are reviewable only upon an abuse of that discretion. *United States v. Bailey,* 550 F.2d 1099, 1100 (8th Cir. 1977). An error in administering the discovery rules is not reversible absent a showing that the error was prejudicial to the substantial rights of the defendant. *Id.* Continuance is similarly a matter within the broad discretion of the trial court. *United States v. Weaver,* 565 F.2d 129, 135 n. 6 (8th Cir. 1977). As nearly as we can discern from the present state of the record, all discoverable materials in the possession of the Government were delivered to Olson at least one week prior to trial. The Government's case at trial was short and straightforward, and the trial court could properly have concluded that one week was sufficient time in which to study the items last discovered. There was no prejudicial error.

■ Third, Olson contends the tax returns and W–4E forms which constituted the basis of the Government's case against him should have been suppressed or "quashed" because the United States attorney's office allegedly obtained them from the Internal Revenue Service illegally. The argument is not an easy one to follow, but it appears to be predicated in large part upon the general prohibition of 26 U.S.C. § 7213 on unauthorized disclosures of tax return information. However, 26 U.S.C. § 6103(h)(2)(A) specifically authorizes disclosure of such information to attorneys of the Justice Department, including United States attorneys, for use in or preparation for any proceeding before a federal or state court in a matter involving tax administration, provided the taxpayer is a party to such proceeding. This authorization is plainly sufficient here. *See Patrick v. United States,* 524 F.2d 1109, 1115–16 (7th Cir. 1975); *Laughlin v. United States,* 154 U.S.App.D.C. 196, 207, 474 F.2d 444, 453 n. 12 (1972). Beyond this initial point, Olson also appears to argue that even if the information could have been disclosed to the United States attorney in a legal manner the procedure employed here was illegal, and further, that he was at least entitled to an evidentiary hearing on the matter. We have searched the record in vain to find even a hint as to how the procedure employed was supposedly illegal, and we can only conclude that the contention is entirely one of conjecture. Consequently, no hearing was required. *See United States v.*

*Losing,* 539 F.2d 1174, 1177–78 (8th Cir. 1976).[2]

Fourth, Olson contests the admissibility of most of the Government's exhibits, on grounds of inadequate foundation and materiality, as well as the sufficiency of the evidence to support the convictions. This contention requires a brief synopsis of the Government's case at trial.

As already noted, the Government's case was short and straightforward. Olson is a tax protester. Government exhibits 4 and 5 were the W–4E forms signed by Olson on November 22, 1975 and April 29, 1976. On each Olson certified that he had incurred no federal income tax liability for the prior year and anticipated none in the current year. Attached to each was a list of reasons why, in Olson's opinion, the federal income tax is unconstitutional or otherwise illegal. Government exhibits 6, 7, 8 and 9 were certain payroll records of the Chicago and Northwestern Transportation Company showing earnings by Olson for the years 1974 through 1977, inclusive; Government exhibits 11, 12 and 13 were the form 1040 tax returns filed by Olson and his wife for the years 1974 through 1976, inclusive. These seven exhibits were offered and received for the purpose of showing that Olson did have income tax liability for the years in question. The Government called four witnesses, largely for purposes of authenticating the exhibits.

Olson contends that no proper foundation was laid for the receipt of any of the above exhibits because it was never shown that any of the exhibits pertained to the same "Douglas Duane Olson" or "Doug-las D. Olson" or "D. D. Olson" as the defendant. The contention is without merit. "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims" Rule 901(a), Fed.R.Evid. Here, there is strong corroborative evidence that the prosecution was not mistakenly brought against the wrong Douglas Olson, and there is no serious contention that it was. Olson's materiality objections are equally without merit. All of the exhibits, with the possible exception of exhibit 9, a payroll record for 1977, were unquestionably material to establishing the falsity of the certifications made on the W–4E forms. If any error occurred in the admission of exhibit 9, it was without doubt harmless. Olson's challenge to the sufficiency of the evidence rests largely upon the assertedly erroneous admission of the above exhibits into evidence and is likewise without merit.[3]

Fifth, Olson challenges the trial court's instruction on the element of *willfulness.* The jury was instructed that in order to return a verdict of guilty on either count it must find beyond a reasonable doubt that Olson had supplied information to his employer that he had not incurred a federal income tax liability for the years specified, that the information so supplied was false or fraudulent and that such supplying of information was done willfully. The court then defined "false", "fraudulent" and "willfully" as follows:

Information is fraudulent if it was falsely furnished with the intent to deceive.

---

2. It is by no means certain that the tax returns and W–4E forms should have been excluded even if they were illegally disclosed to the United States attorney. As Judge (now Mr. Justice) Stevens observed for the Seventh Circuit in the *Patrick* case, *supra* at 1115 n. 8:

In order to shorten this opinion, we assume arguendo that the transcripts would be inadmissible if they were obtained illegally, but there is, of course, no certainty that the exclusionary rule would be extended to a situation of this kind. *Cf. Calandra v. United States,* 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561.

3. Olson devotes a considerable portion of his brief on this point to the proposition that when a conviction is reversed for insufficient evidence, and no motion for new trial is made in the district court, dismissal of the indictment or information rather than a new trial is the proper disposition. We recently made clear our agreement with this principle. *United States v. Barker,* 558 F.2d 899 (8th Cir. 1977). It is of no avail to Olson, however, because the evidence here was sufficient.

Information is false if it was untrue when furnished and was then known to be untrue by the person furnishing it. False means more than merely incorrect.

"Wilfully" requires that the act of furnishing information was done with the belief or knowledge that he had or would have tax liability under the tax laws of the United States. The word denotes an act which is intentional or knowing or voluntary and done with bad faith or evil intent and without justifiable excuse. In determining whether the defendant has acted wilfully, it is not necessary for the United States to show that the defendant knew that he was breaking any particular law. Every person is presumed to know the law.

Olson objected to the last sentence on this instruction at trial and renews the contention on appeal. Because the last two sentences of the instruction are contextually linked and express essentially the same idea, we treat the objection as applicable to both.

■ The meaning of "willfully" as used in 26 U.S.C. §§ 7201–7207, inclusive, has been extensively reviewed in recent decisions of both the Supreme Court and this court. *United States v. Pomponio*, 429 U.S. 10, 97 S.Ct. 22, 50 L.Ed.2d 12 (1976); *United States v. Bishop*, 412 U.S. 346, 93 S.Ct. 2008, 36 L.Ed.2d 941 (1973); *United States v. Ojala*, 544 F.2d 940 (8th Cir. 1976); *United States v. Pohlman*, 522 F.2d 974 (8th Cir. 1975) (*en banc*); *United States v. Swanson*, 509 F.2d 1205 (8th Cir. 1975). As a consequence, it is now firmly established that "the word 'willfully' in these statutes generally connotes a voluntary, intentional violation of a known legal duty." *United States v. Bishop, supra*, 412 U.S., at 360, 93 S.Ct. at 2017. Olson contends, with some force, that this "known legal duty" standard is inconsistent with the trial court's charge that "[e]very person is presumed to know the law." We do not undertake to resolve the issue, however, because we are not persuaded that the charge, even if it was erroneous, prejudiced any substantial rights in this case.

■ The certification contained in the W–4E form signed by Olson on November 22, 1975, recited: "*Under penalties of perjury,* I certify that I incurred no liability for Federal income tax for 1974 and that I anticipate that I will incur no liability for Federal income tax for 1975." (Emphasis supplied). The certification contained in the W–4E form signed by Olson on April 29, 1976, was identical, except that it referred to the years 1975 and 1976. In addition the statement attached by Olson to each W–4E form began with the sentence: "I wish it expressly understood that I have signed the W–4E exemption from withholding of Federal Income tax under the penalties of perjury. . . ." There was thus no real issue at trial as to whether Olson knew it was illegal to make a false certification. The only real issues were whether he willfully made the certifications and whether he knew they were false or fraudulent at the time he made them. On these two issues, the trial court's instructions were correct.[4] Under the circumstances, then, the possibly erroneous instruction that

---

4. We cannot accept Olson's argument that the trial court's instructions allowed the jury to return a verdict of guilty merely upon a finding that Olson carelessly or recklessly disregarded the law. The jury was instructed: "The word ['willfully'] denotes an act which is intentional or knowing or voluntary and done with bad faith or evil intent and without justifiable excuse." Under the cases cited in the text, *supra*; this formulation is entirely unobjectionable. *Compare United States v. Benjimina*, 499 F.2d 117 (8th Cir. 1974) (jury instructed: "Defendant's conduct is 'willful' if he acted through a careless or reckless disregard of the law"; conviction reversed).

We also point out, although the issue is not raised, that this court has rejected the view that a statement must be deceptive or misleading in order to be "false." The offense under 26 U.S.C. § 7205 is established when the Government proves the taxpayer willfully supplied false information. *United States v. Buttorff, supra* at 626; *United States v. Hinderman, supra* at 102. Here, the jury was properly instructed that Olson could not be convicted unless it was established beyond a reasonable doubt that the certifications made were false and known by Olson at the time made to be false.

"[e]very person is presumed to know the law" could not have misled the jury. The error, if any, was harmless beyond a reasonable doubt. *See Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); *United States v. Trabucco,* 424 F.2d 1311, 1320–21 (5th Cir. 1970).

■ Sixth, Olson contends the trial court erred in striking the testimony of defense witness Kaye Scott and in refusing to give a requested instruction concerning mental capacity. Kaye Scott is an alcoholism and drug therapist. Her testimony was largely to the effect that Olson was not responsible for his actions because of a problem with alcohol. The trial court struck her testimony, instructed the jury to disregard it and refused to give an instruction on mental capacity. These rulings were predicated upon Rule 12.2, Fed.R. Crim.P., which requires notice of expert testimony relating to a mental disease, defect, or other condition bearing upon the issue of whether a defendant has the mental state required for the offense charged.[5] Olson does not contend that he complied with Rule 12.2 but argues instead that his *pro se* defense should excuse compliance with the rule and that the Government did not object to Kaye Scott's testimony at the time it was given. The Supreme Court has made clear, however, that the right of self-representation is not a license to disregard compliance with relevant rules of substantive and procedural law. *Faretta v. California, supra,* 422 U.S. at 835 n. 46, 95 S.Ct. 2525. *See also Minor v. United States,* 375 F.2d 170, 172 (8th Cir. 1967). Nor did the Government's failure to object to the testimony at the time it was given foreclose the trial court from disallowing the testimony. Subdivision (d) of Rule 12.2 specifically provides that the district court may, upon failure of the defendant to give the required notice, exclude the testimony of any expert witness offered by the defendant on the issue of his mental state. The trial court's rulings here were fully authorized by the rule. *Cf. United States v. Staggs,* 553 F.2d 1073, 1076–77 (7th Cir. 1977) (conviction reversed over dissent notwithstanding failure to comply with Rule 12.2, but only because the district court had relied (erroneously) on relevancy ground, rather than on Rule 12.2, in excluding evidence at trial).[6]

■ Seventh, Olson contends under Rule 30, Fed.R.Crim.P., that the trial court should have entertained objections to its instructions after, rather than before, closing arguments and delivery of the instructions to the jury. Although we strongly recommend that objections be entertained after the instructions are delivered, *see United States v. Taglianetti,* 456 F.2d 1055, 1056–57 (1st Cir. 1972), the trial court here made clear that all objections would be preserved and, more significantly, that additional objections could be made after the instructions were read. Olson does not allege even now that he has any additional objections to the instructions. Accordingly, no prejudicial error occurred.

■ Eighth and finally, Olson challenges a provision in the District of Nebraska's jury selection plan which allows persons to be excused from jury service upon request if they live more than one hundred fifty miles from the place where court is

---

5. Rule 12.2 in pertinent part provides:

  (b) Mental Disease or Defect Inconsistent with the Mental Element Required for the Offense Charged. If a defendant intends to introduce expert testimony relating to a mental disease, defect, or other condition bearing upon the issue of whether he had the mental state required for the offense charged, he shall, within the time provided for the filing of pretrial motions or at such later time as the court may direct, notify the attorney for the government in writing of such intention and file a copy of such notice with the clerk. The court may for cause shown allow late filing of the notice or grant additional time to the parties to prepare for trial or to make such other order as may be appropriate.

  \* \* \* \* \* \*

  (d) Failure to Comply. If there is a failure to give notice when required by subdivision (b) of this rule or to submit to an examination when ordered under subdivision (c) of this rule, the court may exclude the testimony of any expert witness offered by the defendant on the issue of his mental state.

6. We express neither agreement nor disagreement with this decision.

held. The argument is without merit. *See United States v. Florence,* 456 F.2d 46 (4th Cir. 1972); *cf. United States v. Olson,* 473 F.2d 686, 688–89 (8th Cir. 1973); *United States v. Gordon,* 455 F.2d 398, 401 (8th Cir. 1972).

Affirmed.

LARSON, Senior District Judge, concurring.

I concur.

I do not believe that the instruction "every person is presumed to know the law" can be reconciled with the Supreme Court's discussion of "willfully" in *United States v. Bishop,* 412 U.S. 346, 360–61, 93 S.Ct. 2008, 2017, 36 L.Ed.2d 941 (1973):

> In our complex tax system, uncertainty often arises even among taxpayers who earnestly wish to follow the law. . . "It is not the purpose of the law to penalize frank difference of opinion or innocent errors made despite the exercise of reasonable care." . . . The requirement of an offense committed "willfully" is not met, therefore, if a taxpayer has relied in good faith on a prior decision of the Court. . . . The Court's consistent interpretation of the word "willfully" to require an element of mens rea implements the pervasive intent of Congress to construct penalties that separate the purposeful tax violator from the well-meaning, but easily confused, mass of taxpayers.

I am also constrained to disagree with the majority's conclusion that the instructions on the question whether Olson knew his certifications to be false or fraudulent at the time he made them were entirely correct. The instruction on presumed knowledge of the law tends to infect the other instructions relating to knowledge.[1]

Nevertheless, I agree that the error was harmless beyond a reasonable doubt. When read in their totality, the instructions conveyed a clear picture of the nature of the alleged offense and its essential elements.

Moreover, the evidence of Olson's guilt is overwhelming.

---

1. The instruction on willfulness found in *United States v. Hinderman,* 528 F.2d 100, 101 (8th Cir. 1976), is immune from the criticisms leveled here and is to be recommended in tax fraud cases such as this.