829 F.2d 39
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Marvin E. MORRIS, Plaintiff-Appellant,
v.
Timothy DOAN and Jack Vanderwal, Defendants-Appellees,
Michigan State Police, Defendant.
 No. 86-1718
 United States Court of Appeals, Sixth Circuit.
 September 15, 1987.
 
 Before CORNELIA G. KENNEDY, MILBURN and ALAN E. NORRIS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff-appellant Marvin E. Morris ('appellant') appeals the District Court's order granting, in part, the motion of defendants-appellees Timothy Doan and Jack Vanderwal ('appellees') for a directed verdict. Appellant presents two issues for review: 1) whether the transfer of the appellant's case from the Detroit Administrative Unit to the Port Huron Administrative Unit violated his right to a fair trial; and 2) whether the District Court improperly granted appellees' motion for a directed verdict on the appellant's claim of unlawful search and seizure. For the reasons set forth below, we affirm the order of the District Court.
 
 
 2
 Appellees are Michigan State Police Officers. While on duty in their patrol car on October 18, 1984 they followed the appellant's car as it turned out of a gas station located near Auburn and Plymouth roads in Detroit and travelled southbound on Auburn. According to the appellees, the appellant wove from side to side, proceeded at about ten miles per hour, and stopped for an unusually long time at a clear intersection. Record #66 at 84; Record #67 at 140. The appellant disputes that he wove, but agrees that he was travelling at between ten and fifteen miles per hour and testified at trial that it was his practice to stop at all intersections, regardless of the signal. Record #62 at 117-19.
 
 
 3
 The appellees followed the appellant for about three and a half blocks, travelling into a residential neighborhood. Appellees testified that they activated the patrol car's overhead flashers and side spotlights and blew the horn, but that the appellant did not respond. The appellant insisted at trial that he did not notice any signals until he was almost at the entrance to his home's driveway, at which time he turned into the driveway and pulled into his garage. Record #62 at 121. The appellees pulled in behind him. As the appellant got out of his car, he reached under what appeared to be the car's dashboard. As it turned out, he was merely activating an anti-theft device, Record #62 at 123-24, but at the time the appellees thought that he may have been searching for a weapon or hiding evidence of intoxication.
 
 
 4
 The appellees testified that they approached the car and asked to see the appellant's driver's license. Record #67 at 144. The appellant refused, whereupon the appellees arrested him for not having a driver's license.[1] A scuffle ensued, during which the appellees patted down the appellant and searched his car. They did not find any contraband. The appellees handcuffed the appellant and put him in the patrol car. After a neighbor came over and explained to the appellees that the appellant suffered from heart problems and sometimes acted strangely when he was under the influence of medication, the appellees released him with a warning.
 
 
 5
 The appellant subsequently filed suit under 42 U.S.C. Sec. 1983 against the appellees and the Michigan State Police Department[2] in the U.S. District Court for the Eastern District of Michigan. He alleged that the appellees had violated his fourth amendment right to be free from illegal searches and seizures and his fourteenth amendment right to equal protection, and had used excessive force during his arrest.
 
 
 6
 On July 16, 1986, the Acting Chief Judge transferred the case pursuant to Local Rule 8(f) from the Detroit Administrative Unit to the Port Huron Administrative Unit because the Port Huron court had very few cases. Both of these units are in the Southern Division of the Eastern District of Michigan. The appellant objected to the transfer, alleging that the transfer would impede his ability to get a fair trial since the jurors in Port Huron are selected from different counties from those from which jurors in Detroit are selected.[3]
 
 
 7
 At the close of the appellant's case the trial court granted, in part, appellee's motion for a directed verdict, dismissing the appellant's equal protection and fourth amendment claims. The jury returned a verdict in favor of the appellees on the issue of whether they had used excessive force.
 
 I.
 
 8
 Appellant claims on appeal that the transfer of his case from the Detroit Administrative Unit to the Port Huron Administrative Unit denied him his right to a fair trial by a jury of his peers. This claim has little merit.
 
 
 9
 District courts have the authority to make their own local rules for the conduct of their business. 28 U.S.C. Sec. 2071; Fed. R. Civ. P. 83. The local rules must be consistent with the Federal Rules of Civil Procedure, Acts of Congress, and rules of practice and procedure prescribed by the Supreme Court. Williams v. United States District Court, 658 F.2d 430, 435 (6th Cir.), cert. denied, 454 U.S. 1128 (1981). A local rule is inconsistent with federal rules and statutes if it alters those aspects of the litigation process which bear upon the ultimate outcome of litigation, thereby frustrating federal policies. Id.
 
 
 10
 Pursuant to this authority, the U.S. District Court for the Eastern District of Michigan promulgated Local Rule 8(f), which provided:[4]
 
 
 11
 To promote docket efficiency, cases may be reassigned by the Chief Judge from one Judge to another Judge but with, and only with, the consent of the Judge to whom the case is assigned and with, and only with, the consent of the Judge from whom it is assigned.
 
 
 12
 Pursuant to this Rule, the Acting Chief Judge transferred the appellant's case from a judge in Detroit to a judge in Port Huron. No evidence is before this Court that indicates the Chief Judge did not fully complay with this rule.
 
 
 13
 Appellant argues that since transferring a case pursuant to Local Rule 8(f) results in a different group of potential jurors, the Rule impermissibly impacts on the ultimate outcome of the litigation process. However, the appellant does not cite to any case or statute which states that moving a trial from one court to another within a judicial division is unlawful, or which requires that jurors be selected from a particular area within a judicial division.
 
 
 14
 The appellant does not have a right to have his case tried in Detroit. United States v. Brown, 535 F.2d 424 (8th Cir. 1976) held that a criminal defendant does not have the right to a trial within a particular division of a district so long as the case is tried within the same district in which the crime was committed. Id. at 429. In the case before the Court, the appellant's case was tried not only in the same district, but within the same division.
 
 
 15
 Nor does the appellant have a right to jurors from particular counties within a division. The Jury Service & Selection Act of 1968, 28 U.S.C. Sec. 1861 et seq. codifies the rights of litigants in federal courts with respect to jurors. It establishes that those litigants who are entitled to a trial by jury have the right to grand and petit juries selected at random from a fair cross section of the community of the district or division wherein the court convenes. 28 U.S.C. Sec. 1861. In Duren v. Missouri, 439 U.S. 357 (1979) the Supreme Court stated:
 
 
 16
 In order to establish a prima facie violation of the fair-cross-section requirement, the [litigant] must show (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.
 
 
 17
 Id. at 364. The appellant has made no such showing.
 
 
 18
 Interdivisional transfers, with nothing more, do not violate the Act. In United States v. Florence, 456 F.2d 46 (4th Cir. 1972) the actions which gave rise to the suit occurred in Parkersburg, which was one of six places of holding court in the Northern District of West Virginia. The suit was tried in Elkins, one of the other places of holding court. The jury pool for the Elkins court was selected from completely different counties from those which the jury pool for Parkersburg was chosen from. The court held that the defendant, who challenged the change of jury pool, had neither a constitutional nor a statutory right to either a jury chosen from the entire district or a jury selected from the Parkersburg counties. Id. at 49. See also United States v. Lewis, 504 F.2d 92, 99 (6th Cir. 1974), cert. denied, 421 U.S. 975 (1975) (selection of jurors from the entire Eastern District of Kentucky rather than only from the place where the crime took place did not violate 28 U.S.C. Sec. 1861).
 
 II.
 
 19
 The appellant also argues that the District Court erred in granting the appellees' motion for a directed verdict as to the appellant's claim of unlawful search and seizure. A directed verdict is appropriate when, considering the evidence in the light most favorable to the nonmoving party, 'it is clear that reasonable men could come to only one conclusion.' Bellamy v. Bradley, 729 F.2d 416, 418 (6th Cir.), cert. denied, 469 U.S. 845 (1984). The District Court granted a directed verdict with respect to the stop of the appellant's car, the frisk of the appellant, and the search of his car. Appellant conceded at oral argument the constitutionality of the frisk of the appellant and the search of his car, therefore only the issue of the legality of the stop of the appellant's car remains before this Court.
 
 
 20
 Appellant argues that he had good reasons for driving the way he did, and thus a jury could have found that he was driving in a reasonable manner. His subjective reasons for his actions are not relevant, however. A police officer may stop an automobile without a warrant if he has a reasonable or founded suspicion that the vehicle or its occupants are 'subject to seizure for violation of law.' United States v. Tate, 694 F.2d 1217, 1222 (9th Cir. 1982) (quoting Delaware v. Prouse, 440 U.S. 648, 663 (1979)), vacated on other grounds, 468 U.S. 1206 (1984); see also United States v. Brignoni-Ponce, 422 U.S. 873, 880-81 (1975) ('[investigative] stops . . . may be justified on facts that do not amount to the probable cause required for an arrest'). '[I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.' Terry v. Ohio, 392 U.S. 1, 21 (1968).
 
 
 21
 The plaintiff testified that he had been driving between ten and fifteen miles per hour, and that it was his practice to stop at all intersections regardless of traffic signals. It was undisputed that he had stopped for an unusually long time at a clear intersection. These are 'specific and articulable facts' which could make a police officer reasonably suspicious that the appellant was driving under the influence of drugs or alcohol. Appellant argues that if the police were reasonably suspicious of his driving, they should have pulled him over when they first observed his erratic behavior. We find, however, that the decision of the appellees to follow the appellant for three and a half blocks before pulling him over was within their discretion. Consequently, the District Court did not err in granting the appellees' motion for a directed verdict as to the reasonableness of the stop.
 
 
 22
 Accordingly, the order of the District Court is AFFIRMED.
 
 
 
 [1]
 A driver's refusal to show his driver's license when a police officer asks to see it is a misdemeanor in Michigan. Mich. Comp. Laws Ann. Secs. 257.311, 257.901 (West 1977 & Supp. 1987)
 
 
 [2]
 The trial court dismissed the appellant's claim against the Michigan State Police Department, and that dismissal is not appealed
 
 
 [3]
 At that time, Port Huron jurors were selected from Macomb, St. Clair and Sanilac Counties while Detroit jurors were chosen from Macomb, Oakland and Wayne Counties. Local Rules 7, 25. A jury was selected on July 16, 1986. During jury selection, appellant questioned the jurors at length on possible racial bias
 The appellant also complained that the transfer would impede his ability to present witnesses at trial, and that his health problems required trial in Detroit. The trial court did not agree, but indicated that it would accommodate him as much as possible.
 
 
 [4]
 This is the prior Local Rule 8(f). The Local Rules were revised in 1986