UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                              No. 98-4090

MICHAEL LEROY DARITY,
Defendant-Appellant.

Appeal from the United States District Court
for the Western District of North Carolina, at Asheville.
Lacy H. Thornburg, District Judge.
(CR-95-132)

Submitted: May 11, 1999

Decided: June 17, 1999

Before WILKINS, LUTTIG, and TRAXLER, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Jake Arbes, Atlanta, Georgia, for Appellant. Mark T. Calloway,
United States Attorney, Brian Lee Whisler, Assistant United States
Attorney, Charlotte, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Michael Leroy Darity was convicted, following a jury trial, of conspiracy to manufacture and distribute cocaine base, in violation of 21 U.S.C.A. § 846 (West 1981 & Supp. 1998). He was sentenced to 384 months of imprisonment, to be followed by five years of supervised release. Darity appeals his conviction and sentence, and we affirm.

I.

On December 6, 1995, Darity was charged in the first count of a two-count indictment with conspiracy to manufacture and distribute cocaine base. The conspiracy was alleged to have operated in Buncombe County, North Carolina, beginning on or about February 1, 1992, and ending on or about December 31, 1994.

Following his indictment, Darity eluded arrest for sixteen months. His good fortune ran out on April 11, 1997. A day earlier, an acquaintance named Chris Stepp had approached Darity and offered him a "couple of hundred dollars" to accompany Stepp on "a run" to Atlanta. Darity knew his way around Atlanta, and he had no money, so he agreed. Stepp later picked Darity up, and the two drove to Atlanta in a car Stepp had rented. Upon arriving, they immediately went to some apartments, where Stepp purchased nine ounces of cocaine for $6500. They spent the night in an Atlanta hotel.

The next morning, the pair was traveling northeastward on Interstate 85 in Anderson County, South Carolina. Darity was driving. A county deputy sheriff using radar determined that the car was exceeding the speed limit. The deputy, Matt Durham, pulled the car over. He walked up to the driver's side and asked Darity to step out of the car and to provide the car's registration and his driver's license. Durham saw that there was a passenger. He looked at the license given him by Darity. It bore the name "Marcus Terrell Ross," and Durham could tell immediately that Darity was not the man pictured on the license. Darity explained that the car was rented, and he did not have the rental papers.

2

Durham could see that Darity was nervous, and he asked where Darity and his passenger had been. Darity replied that they had been to an all-night party in Atlanta. It was then only 10:20 in the morning, and Durham thought it unusual that all-night revelers would have traveled such a distance from Atlanta by that time.

Notwithstanding his suspicions of wrongdoing, Durham decided that, for his own safety, he should not pursue the investigation any further alone. He wrote a warning ticket and gave it to Darity, explaining that he was not being charged and had no court date, but that he must slow down.

As fate would have it, Durham turned back toward his patrol car to see another officer from the sheriff's department arrive. This officer had a dog trained to detect illegal drugs with him.

With his fears for his own safety somewhat abated, Durham decided to ask a few more questions. He turned back to the car. He asked both Darity and Stepp whether there were drugs or illegal items in the car; each denied that there were. He then asked for consent to search the car. Darity replied that the car was not his, and Stepp refused to consent.

The other officer had by then walked up to the car. Durham asked him to bring the dog up and to take a walk around the car. The dog gave a full alert in the trunk area. The officers opened the trunk and found the cocaine, and, upon searching the rest of the vehicle, they found $1500 in cash under a seat. Darity and Stepp were arrested.

Both men were later questioned. When confronted with his lack of resemblance to the person pictured on "his" driver's license, Darity gave his true name and stated that he was wanted by the FBI. The two gave consistent stories, i.e. the cocaine deal was Stepp's, and Darity had ridden along because he needed money and knew Atlanta better than did Stepp.

In advance of trial on the charged conspiracy, the government served notice of its intent to offer evidence of Darity's arrest and subsequent statements under Fed. R. Evid. 404(b). Darity countered with

3

a motion to suppress the evidence. The district court held an evidentiary hearing on the legality of the search and ruled that the search was reasonable and also that the evidence was properly admissible under Rule 404(b).

Though Darity's case was assigned to the Asheville Division of the Western District of North Carolina, the trial was scheduled for the Bryson City Division because the Asheville courthouse was being renovated and no courtroom was available that could accommodate a criminal jury trial. Darity moved for a change of venue to the Asheville or Statesville Division, offering to agree to a continuance until the Asheville courthouse renovations were finished. Darity sought the change because, given the demographic makeup of the three divisions, it was more likely that one or more blacks might serve on the jury in Asheville or Statesville. The district court denied the change of venue, and no blacks served on the jury.

The trial took three days. The government presented numerous cooperating coconspirators who detailed Darity's participation in and leadership of the conspiracy. Darity's defense was an outright denial of involvement, a denial allegedly corroborated by evidence that he had little money during the period. He was convicted.

Darity moved for a new trial. He attached the affidavit of a juror. The affidavit stated that two jurors had held out against conviction for two and one-half hours. At that point, the foreman, who was a retired lawyer, related that he had once advised a guilty client to hide the proceeds of his crimes and never use them and that, as a result, the client was acquitted. The point of this story, of course, was that Darity's lack of wealth did not mean he was innocent. The two reluctant jurors were convinced, and the jury reached a verdict. The district court held that the affidavit did not reveal extraneous prejudicial information upon which the court was empowered to inquire under Fed. R. Evid. 606(b), and it denied the motion for a new trial.

Darity was later sentenced to 384 months of imprisonment. He now appeals.

II.

Darity alleges numerous errors. First, he contends that the district court erred in denying him a new trial based on the jury's consider-

4

ation of "extraneous prejudicial information." Disposition of a motion for new trial is committed to the discretion of the district court, and we review only for abuse of that discretion. United States v. Cheek, 94 F.3d 136, 140 (4th Cir. 1996).

Fed. R. Evid. 606(b) precludes inquiry into the validity of a jury verdict, with very limited exceptions:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

Darity contends that the foreman's story about his client is "extraneous prejudicial information" that is excepted from the general rule. We disagree.

As the district court recognized, "extraneous prejudicial information" means information about the specific case that the jury has acquired outside of the judicial process. See Hard v. Burlington Northern R.R., 870 F.2d 1454, 1460-62 (9th Cir. 1989); United States ex rel. Owen v. McMann, 435 F.2d 813, 818 (2nd Cir. 1970). Inasmuch as the foreman did not profess or relate any extrajudicial knowledge of Darity's financial condition, his story does not fall within the Rule 606(b) exception and hence provides no basis to disturb the verdict.

III.

Next, Darity asserts that the district court should have suppressed or excluded evidence of and resulting from his 1997 arrest.

5

First of all, we doubt that Darity even has standing to challenge the legality of the search. An unauthorized driver of a rental car has no "legitimate expectation of privacy" in the car's contents. United States v. Wellons, 32 F.3d 117, 119 (4th Cir. 1994). Darity specifically disclaimed any interest in the car when Durham asked his permission to search it. Nevertheless, because the evidence at the suppression hearing left it unclear whether Darity was an authorized driver of the car, the district court assumed that he did have standing. We will do likewise, as the reasonableness of the search is manifest.

Durham observed Darity speeding and stopped him. Darity was nervous and gave an odd explanation of the purpose of his travel. Most significantly, he provided a fake, or at best someone else's, driver's license. The last circumstance alone may have justified Darity's arrest for violation of S.C. Code. Ann. § 56-1-510 (Law. Co-op. 1991 & Supp. 1998). Surely it was reasonable for the officers to briefly detain the car for a sniff by the trained dog.

Darity argues, however, that Durham's announced, subjective intent to let him go on his way precluded basing the continued stop and dog sniff on anything the officer knew before then. We disagree. The constitutional reasonableness of a traffic stop is judged by objective, not subjective, factors. Whren v. United States, 517 U.S. 806, 811-13 (1996). If a search or seizure is objectively reasonable, it is valid, even if the officer has some ulterior subjective motive for it. This case is even one more step removed from Whren, because here the officer's subjective motive--fear for his own safety--counseled him not to act upon his reasonable suspicions. That the arrival of his backup caused Durham to overcome his fear is no basis to suppress the evidence.

IV.

Darity next contends that, even if it was lawfully obtained, the evidence was inadmissible. We take an inclusive view of Rule 404(b). Probative evidence of other "crimes, wrongs, or acts" is "generally admissible except when it is offered to prove `the character of a person in order to show action in conformity therewith.'" United States v. Queen, 132 F.3d 991, 994 (4th Cir. 1997) (emphasis added), cert. denied, 118 S. Ct. 1572 (1998). We review the admission of such evi-

6

dence for abuse of discretion. Id. at 995. The rule lists several proper evidentiary purposes other than the forbidden one, including among others intent, knowledge, and lack of mistake; however, the inclusive nature of the rule renders the list non-exhaustive. United States v. Rawle, 845 F.2d 1244, 1247 (4th Cir. 1988).

We need not stray from the list today. The government's case consisted of the testimony of numerous cooperating witnesses, and Darity's defense was, in the district court's words, a flat denial "that he had [any] involvement in the drug trade whatsoever. This defense suggested, essentially, that Darity lacked any knowledge of the drug trade and its participants." In this context, his arrest while carrying cocaine surely suggested that he had such knowledge. Even more telling was the statement that Darity gave to investigators following his arrest. As we mentioned earlier, Darity explained that Stepp had proposed that they "make a run" to Atlanta, that he knew Stepp meant a "drug run," and that Stepp wanted him along because he knew the area in Atlanta. Evidence of knowledge of the drug trade could hardly be better tailored to that purpose. Moreover, the relatively minor role Darity played in the drug run--which was corroborated by Stepp's statement--lessened any danger of unfair prejudice. Finally, the district court gave an appropriate limiting instruction. The court did not abuse its discretion.

V.

Yet another alleged error is the denial of Darity's motion for change of venue. Such motions are committed to the discretion of the district court, and we find no abuse of discretion here.

There is no general constitutional right to trial in a certain division of a federal district court. United States v. Florence, 456 F.2d 46, 50 (4th Cir. 1972). Though the legal basis for his argument is murky, Darity appears to be arguing that, because of the racial makeup of the general population in the division in which he was tried, he was denied equal protection. This argument is unavailing.

The proportion of blacks in the Bryson City Division is smaller than in Statesville or Asheville. However, Darity has failed to allege, much less prove, that blacks are systemically excluded from grand or

7

petit jury duty in that Division, or that they were purposefully excluded from his jury in particular. Of course, holding trial in Bryson City necessarily made the inclusion of blacks on his jury mathematically less likely, but such statistical "impacts" do not in and of themselves establish violations of equal protection. Only where the governmental decisionmaker--here, the district judge--acts <u>for the purpose of</u> exploiting an adverse impact on an identifiable group is equal protection implicated. <u>See Personnel Adm'r of Massachusetts v. Feeney</u>, 442 U.S. 256, 279 (1979). Darity does not suggest that the district court had such ill intent.

VI.

Without objection, numerous cooperating witnesses testified against Darity. He now asserts that the district court erred by permitting the testimony, because the plea agreements violated the federal anti-gratuity statute, 18 U.S.C.A. § 201(c)(2) (West 1969 & Supp. 1999). Because of the lack of a timely objection, we review only for plain error. <u>United States v. Olano</u>, 507 U.S. 725 (1993).

The first and most basic characteristic of a plain error is its plainness--unless the error is "obvious, or, at a minimum, clear under current law," an appellate court may not take note of it. <u>United States v. Castner</u>, 50 F.3d 1267, 1277 (4th Cir. 1995).

Darity's trial was held in July 1997. We are aware of no precedent supporting his argument that existed at that time. The parties cite two subsequent cases that did adopt that view, but neither remains good law. <u>See United States v. Singleton</u>, 144 F.3d 1343 (10th Cir. 1998), <u>vacated and superseded</u>, 165 F.3d 1297 (10th Cir. 1999) (en banc), <u>petition for cert. filed</u>, (Mar. 31, 1999) (No. 98-8758); <u>United States v. Lowery</u>, 15 F. Supp. 2d 1348 (S.D. Fla. 1998), <u>reversed</u>, 166 F.3d 1119 (11th Cir. 1999). It follows that the supposed error was neither "clear" nor "obvious" under current law in July 1997.

VII.

Finally, Darity assails two of the district court's rulings at sentencing. He contends that the district court ran afoul of Fed. R. Crim. P.

8

32(c)(1) by failing to make adequate findings as to the contested facts, which involved the quantity of drugs for which Darity was responsible and his role in the offense. This contention has no merit. The district court relied on its own recollection of the trial testimony, as well as the live testimony of a government investigator, and held that the facts as stated in the presentence report were correct. Because we "can discern the factual bases of the district court's sentencing rulings," United States v. Walker, 29 F.3d 908, 911 (4th Cir. 1994), Rule 32(c)(1) is satisfied. To the extent Darity may be attacking those rulings on the merits, we hold that they are not clearly erroneous.

The judgment of the district court is affirmed. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and oral argument would not aid the decisional process.

AFFIRMED

9