**Richard DEWEESE, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–10006.**

Court of Appeals of Alaska.

Sept. 4, 2009.

Margi Mock, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant.

Timothy W. Terrell, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Talis J. Colberg, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and BOLGER, Judges.

## *OPINION*

BOLGER, Judge.

Richard Deweese entered a plea of no contest to fourth-degree misconduct involving a controlled substance and reserved his right to appeal the superior court's decision denying his motion to suppress the evidence against him. This evidence was obtained after a traffic stop where Deweese's vehicle was subjected to a canine sniff. We conclude that the plea agreement improperly restricted the evidence that we may consider on appeal. We therefore dismiss the appeal and remand the case to the superior court for further proceedings.

### *Background*

On April 25, 2006, Alaska State Trooper Andrew Ballesteros clocked Richard Deweese driving forty-seven miles per hour in a forty mile-per-hour zone while Deweese was traveling westward on Bradway Road in North Pole. Accordingly, Trooper Ballesteros activated his emergency lights to conduct a traffic stop.

Deweese initially turned left onto Dennis Road and pulled into the parking lot of a fire station. But rather than coming to a complete stop, he continued to travel south on Dennis Road toward the Old Richardson Highway. As Deweese drove from the parking lot back onto Dennis Road, Trooper Ballesteros could see Deweese taking both of his hands off the steering wheel and reaching toward the vehicle's center console. While Deweese was reaching for the console, his vehicle swerved in and out of the roadway and onto the shoulder of the road. Deweese

finally stopped his vehicle near the railroad tracks before the Old Richardson intersection.

After Deweese pulled over, Trooper Ballesteros asked Deweese to step out of his vehicle and then performed a patdown search. Deweese did not have his driver's license, but identified himself as Richard Deweese. Ballesteros recognized Deweese's name from anonymous tips alleging that Deweese was involved with methamphetamine distribution. When asked about the delay in pulling over his vehicle and his movements toward the center console, Deweese replied that he was looking for his wallet and driver's license.

Deweese also denied having any weapons, drugs, or paraphernalia in his vehicle. Ballesteros asked what Deweese had in his pockets, and Deweese responded that he had his keys and some money. Deweese consented to Ballesteros's request to see this money, which amounted to $1,030, comprised of four $100 bills, three $50 bills, and twenty-four $20 bills. But Deweese refused to give his consent for Ballestero to search the vehicle; Ballesteros thus called for another trooper with a police dog to perform a canine sniff of the vehicle.

Approximately fourteen minutes after Deweese was initially stopped, Trooper Aaron Mobley arrived with a police dog. Trooper Mobley walked the dog around Deweese's vehicle and informed Ballesteros that the dog had been alerted to something inside. Ballesteros then decided to impound Deweese's vehicle and apply for a warrant to search inside.

When Ballesteros executed the warrant, he found a black magnetized container with two small baggies of methamphetamine in the center console. Deweese was thereafter indicted for one count of third-degree misconduct involving a controlled substance.[1]

Deweese filed a motion to suppress the evidence seized from his vehicle, on the grounds that there was insufficient cause to support the canine sniff and that the warrant was the illegal fruit of that search. Superior Court Judge Randy M. Olsen denied Deweese's motion, finding that Deweese's delay in pulling over and his furtive motions toward the center console established reasonable cause to support the canine sniff. Deweese then entered into a *Cooksey* agreement with the State, where he agreed to plead no contest to the reduced charge of fourth-degree misconduct involving a controlled substance[2] and reserved his right to appeal Judge Olsen's denial of his motion to suppress.[3]

### Discussion

 We require the issues reserved in a *Cooksey* plea to be dispositive to avoid the possibility that parties will use the procedure to require us to consider hypothetical and abstract questions.[4] In *Dow v. State*, we recently added a requirement that a *Cooksey* plea agreement must be in writing and describe the issue reserved for appeal "by specifically referring to the facts of the defendant's case and the legal theories that the parties are relying on."[5]

The parties to this case did file a written plea agreement with the court. But two provisions in the plea agreement cause us concern. Specifically, Paragraph 6 states "that the facts set forth in the court's written opinion on the defendant's motion to suppress the evidence are the undisputed facts of the case." And Paragraph 8 states that "[t]he legal question is whether a delayed pull-over, together with furtive movements with both hands into or under the center console, create a circumstance where an office[r] could reasonably surmise that the defendant was engaged in criminal activity, such that the officer could detain the vehicle and subject it to a dog sniff."

---

1. AS 11.71.030(a)(1).

2. AS 11.71.040(a)(3)(A).

3. *See Cooksey v. State*, 524 P.2d 1251, 1255–57 (Alaska 1974).

4. *Clark v. Anchorage*, 2 P.3d 639, 642–43 (Alaska App.2000); *Miles v. State*, 825 P.2d 904, 905–06 (Alaska App.1992).

5. *Dow v. State*, 155 P.3d 352, 355 (Alaska App. 2007).

These two paragraphs appear to be directed at the requirements we outlined in *Dow*. But their language also seems to express an additional expectation: That this court, when deciding the legality of the investigative stop and the dog sniff, will confine itself to the abbreviated facts expressly relied on by Judge Olsen in his written decision.

If this was indeed the agreement of the parties—that is, if Deweese entered his plea on the expectation that the legality of the seizure and search would be adjudicated on less than the full facts of his case—then Deweese's *Cooksey* plea would be unlawful.

As we explained above, one of the primary rules governing *Cooksey* pleas is that these pleas may not be used to bring hypothetical and abstract questions to an appellate court. For this reason, we cannot allow the parties to fashion a *Cooksey* plea that requires an appellate court to ignore relevant evidence contained in the record.

In Deweese's case, for instance, Judge Olsen's written decision fails to mention or even discuss certain aspects of the police testimony that potentially supported the investigative stop and dog sniff. If Deweese had been convicted following a trial and had then raised this issue on appeal, this court would have been authorized to consider all of the testimony presented on this issue—not just the portions of the testimony expressly mentioned by Judge Olsen in his decision.

If the testimony at the evidentiary hearing revealed an undisputed factual basis for the seizure and search, then this court would be authorized to affirm the superior court's decision on that basis—even if Judge Olsen did not consider this evidence or consider it important.[6] Or in the alternative, if the testimony at the hearing suggested an alternate or supplemental basis for the seizure and search of Deweese's vehicle, we could remand the case to the superior court for supplemental findings of fact.

Because these avenues of decision would be open to us if this had been a normal appeal and because they could potentially be necessary to a fair and just resolution of Deweese's case, we cannot allow the parties to close these avenues and require us to decide the case on truncated facts.

Accordingly, we hold that Deweese's *Cooksey* plea is invalid because he apparently entered his plea based on a promise that this court would decide the case based on an abbreviated set of facts and that we would ignore anything else in the record supporting the superior court's decision.

It is possible that Deweese and the State did not intend to confine this court to the facts expressly mentioned by Judge Olsen in his decision. The manner in which the parties have briefed this appeal suggests that they viewed the facts mentioned in Judge Olsen's decision as only the starting point for their analyses, leaving the parties free to raise additional arguments based on the rest of the testimony presented at the evidentiary hearing. But if this is how the parties understood their *Cooksey* agreement, we would still be obligated to invalidate Deweese's plea because there are no trial court findings to support such arguments.

We are an appellate court: We cannot make new findings of fact, nor can we resolve issues of weight or credibility in the testimony. We can neither uphold nor reverse Judge Olsen's decision by making supplemental findings of fact based on disputed or ambiguous testimony at the evidentiary hearing. If the correctness of Judge Olsen's decision rests on unresolved issues, then Deweese's case must be remanded to the superior court.

For example, the State argues that we should consider the fact that Deweese was carrying over $1,000, which included a large number of $20 bills. The trooper testified

---

**6.** *Cf. Torrey v. Hamilton*, 872 P.2d 186, 188 (Alaska 1994) ("[T]his court may affirm the judgment on any appropriate grounds, *even if it is a ground which was rejected by the trial court.*" (emphasis added)); *Demoski v. New*, 737 P.2d 780, 786 (Alaska 1987) (noting, "An appellee may seek to defend a judgment on any basis established by the record, whether or not it was relied on by the trial court or even raised before the trial court"); *Millman v. State*, 841 P.2d 190, 195 (Alaska App.1992) (same); *Russell v. Anchorage*, 626 P.2d 586, 588 n. 4 (Alaska App.1981) ("In affirming the trial court's ruling, we are not bound by or restricted to the theory used by the trial court in arriving at its conclusion.").

that Deweese's possession of this money supported the suspicion that Deweese was dealing illegal drugs. Deweese, for his part, argues that the trooper's discovery of this money was the result of an illegal detention and patdown search, and that the trooper had no authority to count the money after he determined that Deweese was not armed. The trial court's decision, however, does not address the issue of whether the trooper's request to count Deweese's money constituted an illegal search, or whether Deweese's possession of this money supported the trooper's decision to detain Deweese's vehicle and call in the police dog.

The State also urges us to consider several other evidentiary factors that were not recognized in the trial court's opinion, including the anonymous phone calls stating that Deweese was dealing methamphetamine, Deweese's failure to produce identification, and his questionable explanations for his furtive behavior.

■ The lack of findings by the trial judge regarding these disputed issues may be determinative in this case. If we do not consider the money that Deweese had in his pocket or the other factors argued by the State, then Deweese's delay in pulling over and his furtive gestures may suggest only that he was in possession of some undetermined amount of illegal drugs. Possession of a small amount of illegal drugs for personal use is not an activity involving imminent public danger sufficient to support a temporary detention.[7]

■ On the other hand, trafficking in illegal drugs is an activity involving imminent public danger to public safety sufficient to support a temporary detention.[8] If we consider Deweese's furtive behavior, along with the money and the other factors argued by the State, then the trooper may have had reasonable suspicion that Deweese was dealing in illegal drugs. This suspicion could have justified the brief detention of his vehicle for the canine sniff.

7. *Joseph v. State,* 145 P.3d 595, 599 (Alaska App. 2006).

8. *See Pooley v. State,* 705 P.2d 1293, 1307 (Alaska App.1985).

### Conclusion

As we noted above, our decision in *Dow* requires the parties to identify the issues preserved in a *Cooksey* plea agreement by reference to the specific facts of their case. We do not want to discourage plea agreements or reasonable factual stipulations that promote the expeditious decision of an appeal. But we cannot allow parties to pursue *Cooksey* agreements that require this court to base its decisions on truncated records that ignore relevant evidence presented to the lower court.

We therefore DISMISS this appeal.

COATS, Chief Judge, concurring.

COATS, Chief Judge, concurring.

According to the language of the parties' plea agreement, this case appears to present a simple legal question: "whether a delayed pull-over, together with furtive movements with both hands into or under the center console, create a circumstance where an office[r] could reasonably surmise that the defendant was engaged in criminal activity, such that the officer could detain the vehicle and subject it to a dog sniff." But if we restricted ourselves to this statement of the case as set forth in the plea agreement, it appears that Trooper Ballesteros had at most reasonable suspicion that Deweese was in possession of a controlled substance. (Deweese argues that the dog sniff would have only detected the possible presence of drugs; it would not have produced evidence of other criminal activity.) Generally, reasonable suspicion that a person is in possession of a small amount of illegal drugs for personal use would not constitute "imminent public danger" justifying an investigative stop.[1] Therefore, Deweese would likely prevail if we decided this case based solely on the facts set out in the plea agreement and Judge Olsen's findings.

1. *Joseph v. State,* 145 P.3d 595, 599 (Alaska App. 2006).

But, as the record in this case and the briefs of the parties make clear, there were more facts to this case than are set out in Judge Olsen's findings and the parties' plea agreement. The State argues that in addition to the "delayed pullover, together with furtive movements with both hands into or under the center console," many other factors justified Trooper Ballesteros's actions. The State argues that Deweese "engaged in furtive movements ..., failed to produce identification, had over $1,000 in cash (with a substantial quantity of $20 bills), and gave questionable explanations about the delay in pulling over, his furtive movements, his lack of identification, and the length of time he possessed the car." The State argues that the totality of these circumstances provided Trooper Ballesteros with "reasonable suspicion that Deweese was engaged in illegal drug activity."

In his brief, Deweese argues that his actions prior to the stop did not support a reasonable suspicion that he had recently engaged in any criminal activity. He argues that his subsequent actions and explanations were reasonable and did not create reasonable suspicion. In addition, he argues that Trooper Ballesteros conducted an illegal search when he obtained and counted the money from Deweese's pocket. He also points out that in his findings, Judge Olsen did not give any weight to Deweese's possession of the money.

Therefore, the parties' plea agreement does not encompass the facts of this case or the separate legal issue Deweese raises on appeal. And even if this case had come to us after a trial as a normal appeal, we would need to remand the case for further findings from the trial court.