NOTICE

*The text of this opinion can be corrected before the opinion is published in the* *Pacific Reporter*. *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | |
|---|---|
| TEDDY KYLE SMITH, | Court of Appeals No. A-12309 |
| Appellant, | Trial Court Nos. 2KB-12-00603 CR & 2KB-12-00625 CR |
| v. | O P I N I O N |
| STATE OF ALASKA, | |
| Appellee. | No. 2697 — April 2, 2021 |

Appeal from the Superior Court, Second Judicial District, Kotzebue, Paul Roetman, Judge.

Appearances: Kelly R. Taylor, Assistant Public Defender, and Samantha Cherot, Public Defender, Anchorage, for the Appellant. Ann B. Black, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Kevin G. Clarkson, Attorney General, Juneau, for the Appellee.

Before: Allard, Chief Judge, Harbison, Judge, and Mannheimer, Senior Judge.[*]

Judge MANNHEIMER, writing for the Court and concurring separately.
Judge ALLARD, with whom Judge HARBISON joins, concurring.

_____

[*] Sitting by assignment made pursuant to Article IV, Section 11 of the Alaska Constitution and Administrative Rule 23(a).

Teddy Kyle Smith stands convicted of several felonies: attempted murder, first-degree robbery, first-degree assault, and third-degree assault. Smith committed these offenses near the village of Kiana, but Smith's trial took place in Kotzebue. Smith has appealed his convictions, arguing that the superior court used an improper method for selecting the "jury venire" in his case — *i.e.*, selecting the pool of people who were summoned to court as prospective jurors.

We resolved several of Smith's arguments in our first decision in this case, *Smith v. State*, 440 P.3d 355 (Alaska App. 2019). In particular, we rejected Smith's claim that the selection of his jury venire violated the rule established by the Alaska Supreme Court in *Alvarado v. State*, 486 P.2d 891 (Alaska 1971) — the constitutional requirement that the group of people summoned for prospective jury service in a criminal case must reflect the community where the crime is alleged to have occurred.

However, we left one issue unresolved:

Under Alaska Administrative Rule 15, the jury venire for criminal cases is normally drawn from all eligible people living within a 50-mile radius of the trial site. For cases tried in Kotzebue, this 50-mile radius would include not only the residents of Kotzebue but also the people residing in the villages of Noorvik and Noatak.

But Administrative Rule 15 gives presiding judges the authority to specify a different jury venire area. And over the past 35 years (beginning in 1986), the presiding judges of the Second Judicial District — the judicial district that includes Kotzebue — have issued a series of orders declaring that, because of the expense of transporting and housing prospective jurors who live in the two outlying villages, the jury venire for criminal cases tried in Kotzebue is limited to the people living within a 5-mile radius of Kotzebue. Thus, under the presiding judge's order that was in effect at the time of Smith's trial, the pool of people summoned for jury service at Smith's trial was limited to the people living in or nearby the city of Kotzebue itself.

Smith's attorney told the trial judge that he wished to challenge the factual basis for the presiding judge's conclusion that it would be inordinately expensive if prospective jurors were summoned from the normal 50-mile radius specified in Administrative Rule 15. However, the trial judge did not give Smith's attorney an opportunity to litigate this issue at an evidentiary hearing. We therefore remanded Smith's case to the superior court so that the court could examine and rule on this issue.[1]

The proceedings on remand have taken place, and the superior court has upheld the presiding judge's decision to employ a 5-mile radius for summoning prospective jurors in Kotzebue cases. Smith now appeals again. For the reasons explained in this opinion, we agree with the superior court that the presiding judge's order should be upheld — and we therefore affirm Smith's criminal convictions.

*A more detailed explanation of this issue*

Smith was indicted for committing felonies at a hunting cabin in the wilderness outside the village of Kiana. Because Kiana is located in the Kotzebue venue district, the presumptive site for Smith's felony trial was the city of Kotzebue. See Alaska Criminal Rule 18 and the accompanying map of venue districts promulgated by the Alaska Supreme Court.

When the Alaska Court System prepares the lists of people who can be summoned to serve on juries at the various court locations around the state, these lists of prospective jurors generally do not include the entire eligible population of the corresponding venue districts. Rather, under Alaska Administrative Rule 15, the list of

---

[1] *Smith*, 440 P.3d at 364.

prospective jurors for any particular court site normally includes only the people living within a 50-mile radius of that court site.

The Alaska Supreme Court re-wrote Administrative Rule 15 in 2015, after Smith's trial — so the selection of Smith's jury venire was governed by the pre-2015 version of Rule 15 rather than the current version. But even though the wording of the pre-2015 version differs in significant ways from the wording of the current version, both versions of Rule 15 declare that the default geographic area for a jury venire is the 50-mile radius surrounding that particular court site. See former Administrative Rule 15(b)(2)(i) (2014) and current Administrative Rule 15(c)(2).

However, Administrative Rule 15 also gives the presiding judge of each judicial district the authority to alter this 50-mile jury venire radius. This authority was spelled out with some specificity in the pre-2015 version of Rule 15.

Subsection (c)(1) of the pre-2015 rule declared that a court could alter the default jury venire area (*i.e.*, the 50-mile radius) in either of two circumstances: (1) if the default jury venire area "[would] not provide a petit jury which [was] a truly representative cross-section of the appropriate community" (in which case, the venire area would be enlarged), or (2) if the default jury venire area "would cause unreasonable transportation expenses" (in which case, the venire area would be restricted).

Rather than requiring individual trial judges to make these determinations on a case-by-case basis, subsection (c)(2) of the pre-2015 rule gave the presiding judge of each judicial district the authority to issue blanket orders altering the jury venire area for trials held at a particular court location.

In 1986, acting pursuant to the authority granted by subsection (c)(2) of the pre-2015 version of Administrative Rule 15, the presiding judge of the Second Judicial District issued an order declaring that the jury venire for cases tried in Kotzebue would be summoned from the persons living within a 5-mile radius of Kotzebue.

In his order, the presiding judge acknowledged that "the normal *venire facias*[2] [for trials in Kotzebue] would be a fifty[-]mile radius from Kotzebue", and that this 50-mile radius "would include the [villages] of Noorvik and Noatak". But the presiding judge found that "the air fares, housing, and feeding of prospective jurors [from these villages] would be extremely expensive".

From the text of the presiding judge's order, it appears that the judge considered the option of simply restricting the jury venire to persons living in Kotzebue itself. However, "balancing the expense ... and [the court system's] budget [con]straints" with the goal of summoning jury pools that reflect "a fair representation of the area [where the crime was allegedly committed]", the presiding judge decided to define the Kotzebue jury pool as "those persons living within a five[-]mile radius of the City of Kotzebue".

In the years since 1986, the various presiding judges of the Second Judicial District have issued yearly orders re-affirming this 5-mile radius for cases tried in Kotzebue.[3] Thus, when Smith's case went to trial, his jury venire was drawn from the people living within a 5-mile radius of Kotzebue.

*The historical roots of Administrative Rule 15*

As we have just explained, the pre-2015 version of Administrative Rule 15 (the version at issue in Smith's appeal) authorized the presiding judge of each judicial

---

[2]  "*Venire facias*" is the Law Latin name for the court order that authorized a sheriff to command citizens to report for jury duty. (The Latin words literally mean, "You shall make [them] come.") See the entry for "venire" in Bryan A. Garner, *A Dictionary of Modern Legal Usage* (2nd edition, 1995).

[3]  These orders are on file with the Administrative Director of the Court System.

district to restrict the jury venire area for a particular court site if summoning jurors from the default 50-mile radius posed an inordinate expense, and the rule also allowed the presiding judge to expand the jury venire area for groups of cases if the normal 50-mile radius would fail to provide a pool of prospective jurors representing a fair cross-section of the communities where the crimes allegedly occurred. These provisions of the rule were derived from the provisions of AS 09.20.070 as interpreted by the Alaska Supreme Court in *Crawford v. State*, 408 P.2d 1002 (Alaska 1965), and from the Alaska Supreme Court's later decision in *Alvarado v. State*, 486 P.2d 891 (Alaska 1971).

We turn first to the provision of pre-2015 Administrative Rule 15 that authorized courts to restrict a jury venire area because of the inordinate expense of summoning jurors from a larger area. This portion of Rule 15 was the descendant of pre-statehood law that authorized trial courts to limit the group of people who would be summoned for jury duty, based on the expense of summoning these jurors.

Before 1935, Alaska law specified that the jury venire for each court location would normally consist of "at least four-fifths ... of all ... residents of the [judicial] division in which [that] court is held, who voted at the last preceding general Territorial election ... and who, so far as known to the clerk and jury commissioner, are still residents of [that] division and still qualified by law for such jury service". In addition, the clerk and the jury commissioner were authorized to supplement the jury list with the names of other residents who were known to be legally qualified for jury service, even though these residents did not vote in the last general election. *See* CLA 1933, § 1900.

But in 1935, in the middle of the Great Depression, the Alaska Territorial Legislature amended this statute by adding a concluding sentence that authorized courts to refuse to summon eligible prospective jurors if the attendance of those jurors "[might] involve a large and unnecessary expense":

At any drawing of jurors[,] the court or judge may, by an order made at the time of such drawing[,] reject the names of persons drawn whose attendance, in the opinion of the court or judge, cannot be obtained within a reasonable time, or whose attendance may involve a large and unnecessary expense.

See Alaska Laws 1935, chapter 21.

This rule for summoning prospective jurors — including the provision that authorized judges to exclude prospective jurors because of the expense — was carried forward in the 1949 compilation of Alaska law: ACLA 1949, § 55-7-36.

Four years later, in 1953, the federal Ninth Circuit addressed a criminal case from Fairbanks where the judge exercised the authority granted by § 55-7-36: the judge limited the jury selection pool to those eligible jurors who had telephones or who lived within a 15-mile radius of Fairbanks. The Ninth Circuit ruled that the judge's action was proper since it "was authorized by [§ 55-7-36], and since no prejudice was shown to have been suffered by the appellant". *Yoho v. United States*, 14 Alaska 174, 176–77; 202 F.2d 241, 242 (9th Cir. 1953).

Several years later, after Alaska became a state, the legislature re-enacted the provision of law that authorized judges to limit the scope of a jury venire based on the difficulty or the cost of obtaining a juror's presence. AS 09.20.070 (originally enacted by SLA 1962, ch. 101, § 2.07) authorizes a court to reject an otherwise eligible prospective juror if "the person's attendance cannot be obtained within a reasonable time or may involve a large and unnecessary expense".

Initially, the Alaska Court Rules dealing with jury selection addressed this issue by simply incorporating the provisions of AS 09.20.070. [4] However, the Court

_____

[4] *See* Supreme Court Order No. 5 (1959), page 134.

Rules were later amended to reflect the decisions reached by the Alaska Supreme Court in *Crawford v. State*, 408 P.2d 1002 (Alaska 1965), and in *Alvarado v. State*, 486 P.2d 891 (Alaska 1971).

*Crawford* involved a criminal case from Anchorage. The presiding judge of the Third Judicial District had issued a blanket order restricting the jury venire in Anchorage cases to the area within a 15-mile radius of the city, based on the judge's conclusion that summoning prospective jurors from a larger area entailed a large and unnecessary expense.[5] The defendant in *Crawford* was indicted by a grand jury whose members were summoned from this 15-mile radius. Following his indictment, Crawford attacked the presiding judge's order on two grounds.

First, Crawford argued that the relevant statute, AS 09.20.070, did not allow presiding judges to issue blanket orders that restricted the jury venire area in advance. Instead, Crawford argued, the statute required a juror-by-juror cost evaluation.[6] The supreme court rejected this narrow reading of the statute and upheld a presiding judge's authority to issue blanket orders for particular court locations, if the judge reasonably concluded that summoning prospective jurors from the entire relevant district would entail (in the words of the statute) "a large and unnecessary expense".[7]

The supreme court then found that the Anchorage presiding judge had had a reasonable basis for concluding that the Court System would incur a large and unnecessary expense if prospective Anchorage jurors were summoned from farther away.

---

[5]   *Crawford*, 408 P.2d at 1004.

[6]   *Ibid.*

[7]   *Id.* at 1004–05.

The supreme court noted that an expanded jury venire area would entail greater transportation costs, and the court also noted that the Court System would be required to pay per diem to those jurors for whom it was impracticable to return home each evening. [8] For these reasons, the supreme court upheld the presiding judge's conclusion that adopting the 15-mile radius would allow the Court System to avoid a large expense.

The supreme court then turned to the question of whether this large expense was unnecessary. Indeed, most of the supreme court's opinion in *Crawford* is devoted to this question.

The presiding judge concluded that the additional expense was unnecessary because almost three-quarters of the population of the Third Judicial District was concentrated in the Anchorage area, and because this three-quarters of the population "included most, if not all, of the racial, economic, occupational, and religious groups found in [the district]." [9] But Crawford disputed the presiding judge's characterization of the people residing within the restricted venire area. According to Crawford, the presiding judge's decision to limit the jury venire to a 15-mile radius of Anchorage resulted in a systematic and arbitrary exclusion of several economic, social, and racial groups. [10]

As can be seen from the supreme court's opinion in *Crawford*, this issue was hotly contested in the trial court. The *Crawford* opinion describes several affidavits submitted by the defense — affidavits from individuals who attested that the restricted

---

[8] *Id.* at 1005.

[9] *Ibid.*

[10] *Id.* at 1005–06.

jury venire area resulted in the exclusion of important segments of the community. [11] On the other hand, the *Crawford* opinion describes several counter-affidavits submitted by the State — affidavits from court personnel and other government officials attesting that, even with the 15-mile radius, Anchorage juries and grand juries contained individuals from all walks of life, and from all racial and occupational backgrounds. [12]

During a lengthy discussion of the law pertaining to jury selection, the supreme court endorsed the principle that "[t]he American tradition of trial by jury ... necessarily contemplates an impartial jury drawn from a cross-section of the community". [13] (This is essentially the same principle that, six years later, the supreme court elaborated and adopted as a rule of Alaska constitutional law in *Alvarado*.) And the supreme court declared that it would have been prepared to reverse Crawford's indictment if the record had clearly shown that trial juries and grand juries in Anchorage were being selected in a manner that did not meet this standard. [14]

But the evidence on this issue was conflicting, and the supreme court concluded that the record did not clearly show that the Anchorage jury venire violated constitutional standards. [15]

---

[11]  *Id.* at 1006.

[12]  *Id.* at 1006–07.

[13]  *Id.* at 1008, quoting *Thiel v. Southern Pacific Co.*, 328 U.S. 217, 220–25; 66 S.Ct. 984, 985–88; 90 L.Ed. 1181 (1946).

[14]  *Id.* at 1009.

[15]  The *Crawford* opinion is written as if the supreme court were independently resolving the conflicts in the factual assertions contained in the various affidavits, but we assume that this is simply a stylistic flaw in the opinion — since appellate courts cannot independently resolve issues of fact raised by conflicting testimony, much less issues of fact raised by conflicting affidavits. *See Vaska v. State*, 135 P.3d 1011, 1019 (Alaska 2006); *Schmitz v.*

(continued...)

Although *Crawford* remains good law, the supreme court's later decision in *Alvarado* established a constitutional limitation on how far presiding judges could go in restricting jury venires based on expense.

In *Alvarado v. State*, 486 P.2d at 900–04, the Alaska Supreme Court held the Alaska Constitution requires the Court System to adhere to the jury-selection principle that the supreme court discussed in *Crawford* — the principle that the pool of prospective jurors in criminal cases must represent a fair cross-section of the community where the crimes are alleged to have occurred. Because of *Alvarado*, a presiding judge cannot limit the geographic reach of a jury venire to reduce the Court System's expenses if the resulting smaller geographic area would fail to provide a pool of prospective jurors that represent a fair cross-section of the community where the defendant's crimes are alleged to have occurred.

Nevertheless, in its *Alvarado* decision, the supreme court explicitly declared that it was not overruling *Crawford*, that it was not invalidating the 15-mile jury selection radius used by the Anchorage courts, and that it was not holding that a jury venire area must always include the community where the crime was allegedly committed — so long as the pool of prospective jurors reflects a fair cross-section of that community. *Alvarado*, 486 P.2d at 904–05. If this *Alvarado* requirement is satisfied, then *Crawford* and AS 09.20.070 and Administrative Rule 15 still allow presiding judges to limit the geographic reach of a jury venire if the judge concludes that summoning prospective jurors from a wider area would entail inordinate expense.

---

[15] (...continued)
*Schmitz*, 88 P.3d 1116, 1136 n. 28 (Alaska 2004); *Deweese v. State*, 215 P.3d 1087, 1089 (Alaska App. 2009). We read the *Crawford* opinion as saying that the record failed to clearly demonstrate that the superior court was wrong to uphold Crawford's indictment.

In 1973, following the supreme court's decisions in *Crawford* and *Alvarado*, the supreme court enacted Criminal Rule 24.1 — a rule which incorporated the *Crawford* and *Alvarado* holdings.[16]

Under subsection (b) of this rule, a court was given the authority to alter the jury venire area if the court concluded (1) that the default 50-mile radius would not satisfy *Alvarado* ("[would] not provide a petit jury which is a truly representative cross-section of the appropriate community"), or if the court concluded (2) that selection of jurors using the 50-mile radius "would cause unreasonable transportation expenses".

These two provisions were carried forward *verbatim* when, in 1982, the supreme court rescinded Criminal Rule 24.1 and moved that rule's jury selection provisions into the pre-2015 version of Administrative Rule 15.[17] See pre-2015 Administrative Rule 15(c).

*Smith's arguments on appeal*

As we explained at the beginning of this opinion, we remanded Smith's case to the superior court so that Smith could pursue one remaining aspect of his attack on the presiding judge's order which limited the jury venire in Kotzebue cases to the people living within a 5-mile radius of Kotzebue.

In our first decision in Smith's case, we rejected Smith's argument that this smaller jury venire area resulted in a jury pool that violated *Alvarado*. However, we directed the superior court to re-consider Smith's alternative argument that the presiding judge's order was not justified under the terms of Administrative Rule 15 itself — *i.e.*,

---

[16] *See* Supreme Court Order No. 157 (effective February 15, 1973).

[17] *See* Supreme Court Order No. 531 (effective October 1, 1982).

Smith's assertion that there was insufficient factual support for the presiding judge's conclusion that summoning jurors from the normal 50-mile radius specified in Rule 15 would involve unreasonable expense. [18]

After holding an evidentiary hearing on this matter, the superior court upheld the presiding judge's order, and Smith now appeals that ruling.

Smith first argues that the superior court erred by placing the burden of proof on Smith — *i.e.*, by ruling that it was Smith's burden to show that the evidence did not support the presiding judge's conclusion about the expense of summoning jurors from a larger geographic area, rather than putting the burden on the State to show that the evidence supported the presiding judge's conclusion.

Under the legal doctrine known as the "presumption of regularity", once it is established that a court validly has jurisdiction over a matter, "every act [of the court] is presumed to have been rightly done until the contrary appears". [19] This presumption of regularity likewise applies when, in cases like Smith's, a judicial officer acts in an administrative capacity rather than an adjudicatory one: "Where no evidence indicating otherwise is produced, the presumption of regularity supports the official acts of public officers, and courts presume that they have properly discharged their official duties." *Wright v. State*, 501 P.2d 1360, 1372 (Alaska 1972).

Because Smith was challenging an official act of the presiding judge of the Second Judicial District, Smith bore the burden of showing that the presiding judge's decision was improper.

---

[18]   *Smith v. State*, 440 P.3d 355, 364 (Alaska App. 2019).

[19]   *Jerrel v. State*, 851 P.2d 1365, 1372 (Alaska App. 1993), quoting *United States v. Manthei's Bondsmen*, 2 Alaska 459, 466 (D. Alaska 1905), and citing *Wright v. State*, 501 P.2d 1360, 1372 (Alaska 1972), and *Houston–Hult v. State*, 843 P.2d 1262, 1266 (Alaska App. 1992).

Moreover, we need to point out that the precise question to be litigated was not whether some reasonable people might differ with the presiding judge's decision. Under Administrative Rule 15(c), the decision to restrict the jury venire area on account of expense is entrusted to the presiding judge of the relevant judicial district. Thus, the question to be litigated was whether, given the evidence, the presiding judge of the Second Judicial District could reasonably conclude that the added expense of summoning jurors from a larger area was unreasonable.

Smith next argues that the superior court wrongly prevented Smith's attorney from presenting relevant evidence, and from making relevant arguments, pertaining to the presiding judge's conclusion that summoning prospective jurors from the default 50-mile radius would pose an unreasonable expense.

Specifically, Smith argues that when, under Administrative Rule 15, a presiding judge evaluates whether the expense of a larger jury venire is reasonable, the rule requires the presiding judge to consider and weigh the possibility that the proposed smaller jury pool would result in juries that had a different mix of cultural outlooks, social perspectives, economic characteristics, and "shared local knowledge and beliefs".

In other words, Smith contends that a presiding judge violates Rule 15 if the judge considers only the monetary expense of summoning prospective jurors from the larger geographic area. According to Smith, Rule 15 requires a presiding judge to consider not only the monetary expense, but also the same social and cultural factors that a judge is obliged to consider when making a ruling under *Alvarado* (*i.e.*, a ruling as to whether a particular jury venire would provide a pool of prospective jurors that truly reflects a cross-section of the community where the crime is alleged to have been committed). For the reasons we are about to explain, we conclude that Smith's interpretation of Administrative Rule 15(c) is incorrect.

As we mentioned in the preceding section of this opinion, the relevant version of Administrative Rule 15(c) — the pre-2015 version of the rule — contained one provision that incorporated the supreme court's decision in *Alvarado* (*i.e.*, a provision authorizing the court to adopt an expanded jury venire area to achieve a jury pool that represents a fair cross-section of the relevant community), and a second provision that incorporated the supreme court's decision in *Crawford* (*i.e.*, a provision authorizing the court to adopt a smaller jury venire area if summoning prospective jurors from the larger area would pose an unreasonable expense).

The original source of this "unreasonable expense" provision was the Territorial Legislature's Depression-era enactment of Alaska Laws 1935, chapter 21 — a statute which, for the first time, expressly authorized a court to refuse to summon prospective jurors if the attendance of those jurors "[might] involve a large and unnecessary expense". This statutory provision appears to have been a cost-saving measure, to be decided purely on financial considerations.

Likewise, the text of the *Crawford* opinion shows that the Alaska Supreme Court viewed the expense issue and the *Alvarado* issue as turning on separate considerations. Once a court is assured that the proposed smaller jury venire area will still produce a pool of prospective jurors who represent a fair cross-section of the relevant community, the remaining issue — the question of whether summoning prospective jurors from a larger area would entail an inordinate expense — is a purely monetary issue. See the discussion in *Crawford*, 408 P.2d at 1005–10.

And, as we have already explained, when the supreme court decided *Alvarado*, the court explicitly declared that it was not overruling *Crawford*.[20] Thus, *Crawford*'s analysis of these questions remains good law.

---

[20] *Alvarado*, 486 P.2d at 904–05.

Based on all this, we interpret the "unreasonable expense" provision of Administrative Rule 15(c) to mean that, so long as the requirements of *Alvarado* are met, a presiding judge can restrict the jury venire area based on purely monetary considerations.

In our first decision in Smith's case, this Court addressed and rejected Smith's contention that a jury venire drawn from a 5-mile radius around Kotzebue violated his rights under *Alvarado*. Because this *Alvarado* issue was already resolved, the superior court correctly ruled that the remaining issue on remand was a monetary one. More specifically, the issue was whether, given the facts, the presiding judge of the Second Judicial District could reasonably conclude that summoning prospective jurors from a larger geographic area would pose an unreasonable monetary expense.

We now turn to Smith's contention that the evidence presented to the superior court on remand showed that there was not a sufficient factual basis to support the presiding judge's decision to adopt a 5-mile jury venire radius for Kotzebue cases.

At the evidentiary hearing on remand, the superior court heard testimony from Court System officials regarding the costs associated with bringing prospective jurors to Kotzebue from the villages of Noorvik and Noatak. These officials also testified regarding the Court System's jury venire practices in two other "hub" cities in western Alaska — Bethel and Dillingham — and the costs associated with bringing prospective jurors to these two hub cities from the outlying towns and villages in their venue districts. The court also heard from other witnesses regarding the comparative costs of air travel to and from Kotzebue, Bethel, and Dillingham, as well as the comparative availability and cost of lodging in these three cities.

After hearing this evidence, the superior court upheld the presiding judge's order — *i.e.*, the 5-mile jury venire radius for cases tried in Kotzebue.

More specifically, the court found that expanding the jury venire radius to 50 miles would be "quite expensive", and the court noted that the Court System's budget had been significantly reduced in recent years. The court also noted that, even with the smaller 5-mile radius, the Kotzebue jury pool still provided an adequate number of prospective jurors for the small number of cases that went to trial each year in Kotzebue, and that this jury pool still satisfied *Alvarado* — *i.e.*, it represented a fair cross-section of the rural communities in the Kotzebue venue district.

Based on all this, the superior court upheld the presiding judge's decision that the expense of summoning prospective jurors from the larger 50-mile radius was unreasonable.

On appeal, Smith argues that the evidence fails to support this conclusion. Smith points out that, according to the evidence, the cost of lodging in Kotzebue is about the same as the cost of lodging in Bethel and Dillingham. Smith acknowledges that the cost of air transportation is somewhat higher in the Kotzebue area, but he argues that this higher cost is offset by the fact that, historically, there tend to be fewer jury trials in Kotzebue than in Bethel and Dillingham, and thus the Court System will not need to pay for so many air fares for Kotzebue jurors.

But the superior court explicitly found that Smith's monetary expense argument was based on a false comparison. The court concluded that the situation in Kotzebue was not equivalent to the situations in Bethel and Dillingham — because, in both Bethel and Dillingham, the courts were required to summon prospective jurors from outlying towns and villages for non-economic reasons.

More specifically, the superior court found that the Bethel court was required to use a larger jury venire area in order to satisfy the requirements of *Alvarado*, and that the Dillingham court had to use a larger jury venire area in order to assure that

there was a sufficient pool of prospective jurors for the number of trials held in Dillingham.

In contrast, the superior court found that Kotzebue's smaller 5-mile radius did not raise a problem under *Alvarado*, and that this 5-mile radius provided a sufficient number of prospective jurors. Because of this, the superior court could reasonably conclude that, even though the expense of summoning prospective jurors from outlying towns and villages might be approximately the same for all three court locations (Kotzebue, Bethel, and Dillingham), the presiding judge of the Second Judicial District acted reasonably when he concluded that this expense was unreasonable for trials held in Kotzebue.

*Conclusion*

Based on the evidence presented in this case, we uphold the lower court's ruling that the presiding judge of the Second Judicial District could reasonably conclude that summoning prospective jurors from the entire 50-mile radius around Kotzebue posed an unreasonable expense, and that the presiding judge therefore acted reasonably when, under Administrative Rule 15(c), the judge issued the order reducing the Kotzebue jury venire radius to 5 miles.

For this reason, and for the reasons explained in our earlier decision in this case (*Smith v. State*, 440 P.3d at 362–64), the criminal judgement entered against Teddy Smith is AFFIRMED.

Judge MANNHEIMER, concurring.

I write separately to address the fact that the current wording of Administrative Rule 15 differs in significant ways from its two predecessors — originally, Criminal Rule 24.1 and then later (after 1982), the pre-2015 version of Administrative Rule 15. This difference in wording potentially raises problems for judges and lawyers who need to interpret the current version of Rule 15.

Because Smith's trial took place in 2014 (before the Alaska Supreme Court adopted the current version of Rule 15), this Court does not have to resolve the issues that I am about to discuss. The purpose of my concurrence is solely to identify these potential problems, to explain how they arose, and to offer my tentative analysis of these problems, in case these issues are presented in future cases.

All three versions of the jury venire rule — Criminal Rule 24.1, the pre-2015 version of Administrative Rule 15, and the current version of Rule 15 — declare that, by default, all communities within a 50-mile radius of any particular court location are "assigned" to that court's jury venire area.[1] In other words, the residents of those communities can be summoned for jury duty at trials conducted at that court site.

Moreover, all three versions of the rule authorize courts to order deviations from this 50-mile radius. But with regard to this judicial power to order deviations from the 50-mile radius, the wording of former Criminal Rule 24.1 and the pre-2015 version of Rule 15 differ significantly from the wording of the current version of Rule 15.

---

[1] See former Criminal Rule 24.1(b) (1973), former Administrative Rule 15(b)(2)(i) (2014), and current Administrative Rule 15(c)(2).

*Former Criminal Rule 24.1*

Former Criminal Rule 24.1, enacted in 1973,[2] was the first Alaska court rule to contain explicit directions for the summoning of prospective jurors. Up until that time, Alaska's court rules simply declared that this matter was governed by statute. Indeed, there is still a group of Alaska statutes that address both the method of selection and the number of persons to be included in jury venires; see AS 09.20.040 – 080.

Former Criminal Rule 24.1 was short, and its purpose was simply to alert judges and lawyers to the substantive law governing the designation of jury venires and the selection of trial jurors.

First, Criminal Rule 24.1 declared that the statutory provisions of AS 09.20 governed the qualification of jurors and the procedures of jury selection. Second, the rule declared that the default geographic area for summoning a jury venire was the 50-mile radius surrounding the appropriate court site (the site specified by Alaska's venue rule, Criminal Rule 18.1). Third, Criminal Rule 24.1 authorized a court to deviate from this default 50-mile radius in either of two instances: if the court found (1) that the 50-mile radius would not "provide ... a petit jury which [was] a truly representative cross-section of the appropriate community", or if the court found (2) that summoning jurors using the 50-mile radius "would cause unreasonable transportation expenses".[3]

The provision of Criminal Rule 24.1 authorizing judges to make sure that jury venires that represented "a cross-section of the appropriate community" was obviously meant to incorporate the supreme court's then-recent decision in *Alvarado v. State*, 486 P.2d 891 (Alaska 1971), where the supreme court held that the Alaska

---

[2]   *See* Supreme Court Order No. 157 (effective February 15, 1973).

[3]   Former Criminal Rule 24.1(b).

constitution required that the group of people summoned for jury service in a criminal case had to reflect a fair cross-section of the community where the crime allegedly occurred.

Likewise, the provision of Criminal Rule 24.1 dealing with "unreasonable transportation expenses" was obviously intended to parallel the "unnecessary expense" provision of AS 09.20.070, as interpreted in *Crawford v. State*, 408 P.2d 1002 (Alaska 1965).

*The pre-2015 version of Administrative Rule 15*

Almost ten years later, in late 1982, the supreme court moved these provisions out of Criminal Rule 24.1 and inserted them into a re-written version of Administrative Rule 15 (the pre-2015 version). [4] This pre-2015 version of Rule 15 was substantially lengthier than Criminal Rule 24.1, and most of the rule was devoted to spelling out the mechanics of jury selection — the procedural steps that needed to be followed by judges and court staff pertaining to the summoning and selection of jurors.

However, subsection (c)(1) of the pre-2015 Administrative Rule 15 carried forward (*verbatim*) the provisions of Criminal Rule 24.1 that authorized courts to deviate from the default 50-mile jury venire radius for either of two reasons:  the "fair cross-section" provision and the "unreasonable expense" provision.

In addition, the pre-2015 version of Administrative Rule 15 contained a new provision — subsection (c)(2) — which, for the first time, incorporated one of the major holdings of *Crawford*:  the holding that, not only does AS 09.20.070 authorize trial judges to restrict the scope of the jury venire area in *individual* cases, but the statute

---

[4]    See Supreme Court Order No. 531 (effective October 1, 1982).

also authorizes presiding judges to issue blanket orders that restrict the jury venire area (in advance) for whole categories of cases based on the inordinate expense of summoning jurors from the default jury venire area. [5]

The wording of former subsection (c)(2) did not refer explicitly to *Crawford*, nor did it refer explicitly to the unreasonable expense of summoning certain jurors. Instead, subsection (c)(2) simply spoke generically of a presiding judge's authority to order "alternative assignments" — that is, the presiding judge's authority either to add a community to the jury venire area (*i.e.*, a community outside the default 50-mile radius), or to remove a community from the jury venire area (*i.e.*, a community inside the 50-mile radius):

> (2) Selection of prospective petit jurors will be from all locations assigned [to a court location using the default 50-mile radius] unless an alternative assignment is specifically authorized by the presiding judge. The presiding judge will forward this authorization to the administrative director by February 1 of each year so that the area of [jury venire] selection can be changed.

This language might be read as authorizing presiding judges to include or exclude communities from the jury venire area for any reason at all. But even though this language might appear to give presiding judges unlimited authority to add and remove communities from the jury venire area, former Rule 15(c)(2) must be interpreted in light of the supreme court's decisions in *Crawford* and *Alvarado*.

The *Crawford* decision was the first time that the supreme court recognized the authority of presiding judges to issue blanket orders amending the selection area for jury venires in whole categories of cases (as opposed to the authority of individual judges

---

[5]   *Crawford*, 408 P.2d at 1004–05.

to amend the jury venire area for individual cases).  And although much of the *Crawford* decision was addressed to the "fair cross-section" concerns that later formed the basis for the supreme court's decision in *Alvarado*, the *Crawford* case did not turn on the composition of the jury pool — because the supreme court ultimately concluded that Crawford's jury pool adequately represented a cross-section of the community.  Rather, in *Crawford*, the supreme court held that a presiding judge could lawfully restrict the jury venire area based on the inordinate expense of summoning prospective jurors from the more distant locations within the default 50-mile radius.

Six years later, in *Alvarado*, the supreme court formally recognized a second basis for amending the jury venire area:  the constitutional requirement of summoning a pool of prospective jurors that truly reflects a cross-section of the community where the crime is alleged to have been committed.

I acknowledge that, at least conceivably, when the supreme court promulgated the pre-2015 version of Administrative Rule 15(c)(2), the supreme court purposely chose to omit any explicit reference to the "unreasonable expense" rationale of *Crawford* or the "fair cross-section" rationale of *Alvarado* — choosing instead to word the rule so generically that it might authorize presiding judges to amend jury venire areas for other reasons.

Given the context in which the pre-2015 version of Administrative Rule 15 was promulgated, I doubt that this was the supreme court's intention.  But in any event, it is clear that the generic "alternative assignment" language of former Rule 15(c)(2) was intended, at the very least, to codify the authority of presiding judges to alter jury venire areas under either an *Alvarado* rationale or a *Crawford* rationale:  that is, either to enlarge the venire area to ensure that jury pools represent a fair-cross section of the community, or to reduce the venire area to avoid unreasonable expense.

To sum up this discussion: subsection (c)(1) of the pre-2015 version of Administrative Rule 15 gave individual judges the authority to amend the jury venire area in individual cases, either to achieve a fair cross-section or to avoid unreasonable expense. Subsection (c)(2) of the pre-2015 rule then gave presiding judges the authority to issue blanket changes to the jury venire area for these same two reasons.

*The current version of Administrative Rule 15*

In 2015, the supreme court adopted the current wording of Administrative Rule 15 (through the process of "rescinding and re-adopting" the rule). [6]

The current version of Administrative Rule 15 retains the same default rule for defining the geographic scope of a jury venire — *i.e.*, the 50-mile radius surrounding the court site. [7] And the current version of Rule 15 still authorizes presiding judges to make "alternative assignments" — *i.e.*, to issue blanket orders that either include or exclude particular communities from the jury venire area. [8] However, the current version of Rule 15 no longer contains a subsection authorizing individual judges to alter the jury venire area in individual cases.

As I have just explained, subsection (c)(1) of the pre-2015 version of Rule 15 expressly authorized trial judges to alter the jury venire area in individual cases to satisfy the "fair cross-section" requirement of *Alvarado*, or to avoid unreasonable expense (the authority granted to judges by AS 09.20.070 and *Crawford*). But the current version of Rule 15 omits this subsection.

---

[6]  *See* Supreme Court Order No. 1860 (effective October 15, 2015).

[7]  *See* Administrative Rule 15(c)(2).

[8]  *See* Administrative Rule 15(c)(3).

The legislative history of Administrative Rule 15 gives no indication as to why the supreme court dropped the provisions that authorized trial judges to amend the jury venire area in individual cases. Indeed, the legislative history of Rule 15 indicates that no one thought that the new version of Rule 15 represented *any* change to the substantive law of Alaska.

During the supreme court's consideration of the new version of Administrative Rule 15, the only draft materials and memorandums presented to the supreme court came from Court Administration. The supreme court apparently never asked its standing committee on the Rules of Criminal Procedure to review the proposed changes. The fact that the supreme court did not perceive a need to have the new rule examined and assessed by practicing judges and lawyers indicates that the supreme court did not view the new version of Rule 15 as effecting any change in the substantive law governing criminal proceedings.

This conclusion is bolstered by the contents of one of the primary documents contained in the Court System's Rules Attorney's legislative file: a chart dated February 20, 2014 which compared the then-current language of Administrative Rule 15 with the proposed new language of the rule — along with annotations describing the Court Administration's reasons for the proposed changes.

(This chart is unsigned, but it is organized and formatted in a fashion similar to other legislative materials that have been generated by the Court Administration regarding other proposed rule changes.)

None of the explanations in this chart address the *substantive* content of the new proposed rule. In particular, the chart contains no discussion of the substantive content of subsection (c) of the new rule. Rather, it appears from the drafters' comments that their consistent and limited purpose was to make Administrative Rule 15 easier for

court staff to read and apply, by re-organizing the various provisions of the rule and editing them for stylistic reasons.

This legislative history suggests that, even though the current version of Rule 15(c) is worded significantly differently from the earlier version, and even though the current version of Rule 15(c) completely omits mentioning a trial judge's authority to alter the jury venire area in individual cases, the Alaska Supreme Court did not intend to alter the substantive law codified in the pre-2015 version of the rule — in particular, the provisions of the pre-2015 rule that described a court's authority to alter the jury venire area.

This interpretation is further corroborated by the contents of an e-mail circulated by the Court Rules Attorney on June 14, 2015, shortly after the supreme court adopted the current version of Administrative Rule 15. In this e-mail (which was sent to all the judges and primary court administrators around the state), the Rules Attorney explained the effect of the supreme court's changes to Administrative Rule 15. With regard to the newly-rewritten subsections (b) and (c), the Rules Attorney said only that these subsections were part of the supreme court's effort to organize the provisions of the rule "in a more logical and functional way", and to "describe[]" the "various phases of jury selection ... more clearly."

Based on this legislative record, I conclude that even though the current version of Administrative Rule 15(c) is worded significantly differently from the pre-2015 version of the rule, the current version of the rule was not intended to change the pre-existing law pertaining to either an individual judge's or a presiding judge's authority to alter the geographic area of a jury venire under AS 09.20.070 as interpreted in *Crawford* (*i.e.*, to avoid unreasonable expense), or under *Alvarado* (*i.e.*, to achieve a jury pool that reflects a fair cross-section of the community).

Moreover, even though a trial judge's authority to alter the jury venire area in individual cases is no longer expressly recognized in the current version of Administrative Rule 15, it appears that trial judges still have this authority regardless of the wording of the rule.

Even though a presiding judge may have issued a blanket order that alters the jury venire area for a particular court location, *Alvarado* still requires trial judges to make sure that the pool of prospective jurors in any particular case represents a fair cross-section of the community where the crime allegedly occurred. And under AS 09.20.070, as interpreted in *Crawford*, both presiding judges *and* trial judges have the authority to restrict the normal jury venire area to avoid unnecessary expense.

Judge ALLARD, with whom Judge HARBISON joins, concurring.

Although I join the Court's opinion, I write separately to emphasize what I view as the narrowness of our holding in this case.

In our first decision in this case, *Smith v. State*, 440 P.3d 355 (Alaska App. 2019), we rejected Smith's claim that the jury pool in his case violated *Alvarado v. State*, 486 P.2d 891 (Alaska 1971). We did so because Smith's defense attorney had failed to show that the prospective jurors who were drawn from the Kotzebue area were not representative of the rural community where the crimes took place. *Smith I*, 440 P.3d at 363-64.

On remand, Smith's new defense attorney attempted to remedy this deficiency in the record by offering the testimony of two experts who asserted that there were significant cultural differences between the residents of the outlying villages and the residents of Kotzebue (including the five-mile radius surrounding Kotzebue). The superior court declined to hear this testimony, concluding that it was not relevant to the limited issue to be decided on remand. We now affirm that ruling on appeal. However, in my view, our ruling is based primarily on procedural grounds, and I therefore do not view our decision as necessarily foreclosing any future *Alvarado* challenge.